**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MIRZA BAIG, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>    v.<br><br>NUNA BABY ESSENTIALS, INC.,<br><br>                    Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      Plaintiff Mirza Baig, individually, and on behalf of himself and a Class of those similarly situated ("Plaintiff"), brings this action by the undersigned counsel against Defendant Nuna Baby Essentials, Inc. ("Defendant" or "Nuna") for developing, marketing, and distributing the defective "RAVA" Convertible Car Seat ("RAVA" or "RAVA Car Seat")[1] throughout the United States based upon personal knowledge of the allegations pertaining to himself, and upon information, belief, and the investigation of counsel as to all other allegations.

2.      The RAVA Car Seats are marketed as "convertible" car seats, meaning that they are designed to adjust to accommodate a child from infancy to childhood, beginning as a rear-facing car seat for infants and children from 5 to 50 pounds which can be converted to a forward-

---

[1] The RAVA product line includes several substantially similar models: CS-50-001 Caviar, CS-50-002 Indigo, CS-50-003 Berry, CS-50-004 Blackberry, CS-50-005 Slate, CS05101CHC Charcoal, CS05103CVR Caviar, CS05103FRT Frost, CS05103GRN Granite, CS05103LAK Lake, CS05103OXF Oxford, CS05103ROS ROSE, CS05115DDC Droplet Dot Collection, CS05105BAC Broken Arrow Caviar, CS05106BRS Brushstroke, CS05107RFD Refined, CS05109RVT Riveted, CS05110LGN Lagoon, CS05110EDG Edgehill, CS05111OCN Ocean, CS05114CRD Curated, CS05104THR Threaded, and CS05101HCV Verona. *See* https://nunababy.com/recalls-rava1 ("Recall Notice"), *accessed* March 26, 2025.

facing car seat for children at least 2 years old. As children continue to grow, the car seat can be extended to secure children up to 65 pounds.[2]

3.    The RAVA Car Seats are sold for approximately $550.00,[3] significantly more expensive than similar convertible car seats:



4.    The RAVA Car Seats do not meet minimum standards of operating with the necessary level of safety. Defendant designed over 600,000 RAVA Car Seats manufactured between July 16, 2016 and October 25, 2023 without a cover over the front harness adjuster button, which controls the tightness of the Car Seat straps (the "Defect").[4] As a result, debris—whether from snacks, toys, or any of the endless variety of debris a child can produce—that falls into the front harness adjuster area can "imped[e] the mechanism from properly clamping on the strap," causing the RAVA Car Seat straps to loosen.[5]

---

[2] https://nunababy.com/usa/rava-convertible-car-seat?color_ref=16720, *last accessed March 26, 2025.*

[3] https://brixy.com/products/nuna-rava-monterey-convertible-car-seat-exclusive, *last accessed March 26, 2025.*

[4] Recall Notice; https://www.nbcnews.com/business/recall/nuna-baby-essentials-recalls-600000-rava-car-seats-due-harness-issue-rcna184990, *accessed* March 27, 2025.

[5] https://www.nbcnews.com/business/recall/nuna-baby-essentials-recalls-600000-rava-car-seats-due-harness-issue-rcna184990

5.      As a result of this dangerous Defect, toddlers and children can—and indeed have—loosen the straps of the RAVA Car Seat and even get out of the RAVA Car Seat while their parent is driving. In the worst-case scenario, a child could be insecurely fastened during a car accident, leading to injury or even death.

6.      This is a dangerous Defect which Defendant knew of or should have known and warned customers about, and which has been experienced and reported by disappointed consumers firsthand after the point of sale. No reasonable consumer would purchase a premium, expensive car seat to transport babies and children that has or could develop a serious safety defect that could harm or even kill their child.

7.      Defendant touts the RAVA's "unwavering security," "all-steel frame," and "energy absorbing foam" to convince safety-conscious parents to shell out for an expensive car seat,[6] but all of those safety features are for naught if the RAVA Car Seat fails in its most basic purpose: securely fastening children into the RAVA. As Nuna itself states on its website: "A loose harness may not properly restrain the occupant, increasing the risk of injury in a crash."[7]

8.      Nuna represents the RAVA Car Seat as safe because it knows parents like Plaintiff are concerned for the safety of their children and are willing to pay top-dollar for the safest car seat possible. No reasonable consumer would purchase a premium, expensive car seat to transport children that has or could develop a serious safety defect that could harm their child.

9.      Unfortunately, all consumers who purchased a RAVA Car Seat received a defective and unsafe car seat. The RAVA Car Seats suffer from a significant product safety Defect and as of December 20, 2024, are subject to a major national recall.[8]

---

[6] *See* https://nunababy.com/usa/rava-convertible-car-seat?color_ref=16720
[7] *See* Recall Notice; *see also* https://www.nbcnews.com/business/recall/nuna-baby-essentials-recalls-600000-rava-car-seats-due-harness-issue-rcna184990.
[8] *See id.*

10.    While some consumers can no longer use their RAVA Car Seats because of the Defect, others, whose RAVA's do not show damage at this time or who simply cannot afford to replace their $550 RAVA, now fear for their children's safety because the Defect can manifest while in ordinary use—indeed, the Defect's manifestation is *caused* by perfectly ordinary use. Some consumers have resorted to purchasing substitute car seats.

11.    While there is a significant resale market for used car seats, the defective, recalled RAVA Car Seats in this case have experienced a significant loss in value and useful life because of these issues. And, instead of providing a refund for customers with the RAVAs, Defendant has only offered a "seat pad and cleaning kit" ("Cleaning Kit") purportedly intended to prevent the front harness adjuster button from accumulating debris.[9] Through this suit, Plaintiff requests a full refund and/or applicable damages on these expensive RAVA Car Seats, as well as all other appropriate relief.

## PARTIES

12.    Plaintiff Mirza Baig resides in the State of Virginia.

13.    Mr. Baig has purchased a total of three RAVA Car Seats: two from Nordstrom for $550.00 each and one from Saks Fifth Avenue for $423.99.

14.    Defendant Nuna Baby Essentials, Inc., is headquartered at 70 Thousand Oak Blvd., Morgantown, Pennsylvania 19543-8878. They are owned by Nuna International B.V., a subsidiary of Wonderland Nurserygoods, a Taiwanese company.

## JURISDICTION AND VENUE

15.    This Court has personal jurisdiction over the Defendant. The Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d). Defendant has transacted business and affairs in California and has committed the acts complained of in

---

[9] *Id.*

California. The amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and this case is a class action in which some members of the Class are citizens of different states than Defendant. *See* 28 U.S.C. § 1332(d)(2)(A). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), (c), and (d) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district. Defendant is headquartered and has transacted business and affairs in this district and has committed the acts complained of in this district.

## FACTUAL ALLEGATIONS

**A.     Nuna's RAVA Car Seats and Representations**

17.     Nuna develops, manufactures, markets, and sells car seats, including all variations of the RAVA Car Seat. Per Nuna's website, consumers can purchase the RAVA at Brixy, where it is listed for $550.[10] The RAVA Car Seat is also available at other online and brick and mortar vendors throughout the United States, including such as Nordstrom, Bloomingdale's, Pottery Barn Kids, Neiman Marcus, Kidsland USA, and others.

18.     The RAVA Car Seats are marketed as "convertible" car seats, meaning that they are designed to adjust to accommodate a child from infancy to childhood, beginning as a rear-facing car seat for infants and children from 5 to 50 pounds which can be converted to a forward-facing car seat for children at least 2 years old. As children continue to grow, the car seat can be extended to secure children up to 65 pounds.[11]

---

[10] https://nunababy.com/usa/rava-convertible-car-seat?color_ref=16720; https://brixy.com/products/nuna-rava-monterey-convertible-car-seat-exclusive.
[11] https://nunababy.com/usa/rava-convertible-car-seat?color_ref=16720, *last accessed March 26, 2025*.

19.     On information and belief, Plaintiff alleges that sometime around 2020, Nuna represented that the RAVA Car Seat would expand to grow with consumers' children, and last 10 years. Consumers have discussed this representation online.[12]

20.     The RAVA Car Seat is marketed as "a reliable anchor to your child's car-riding adventures and your parental peace of mind[.]" Nuna promises that consumers who buy a RAVA Car Seat "can trust in its unwavering security[.]"

21.     On the "Features & Specs" page for the RAVA Car Seat, Nuna begins by listing six safety features, including several promising that consumers' children will be securely fastened into the RAVA. Specifically, Nuna advertises the RAVA's:

- "All-steel frame and reinforced belt path for superior protection

- EPO energy-absorbing foam and Side Impact Protection (SIP) pods for ultimate safekeeping

- Simply™ secure installation for confidence every time

- True tension™ doors provide a secure fit without the struggle

- Colored belt path indicators decrease risk of install errors

- Quick-release 3 to 5-point harness makes it easy to fasten them in[.]"[13]

22.     Nuna also engaged in targeted advertisement for the RAVA Car Seat through the internet and social media. Targeted advertisement occurs when, based off a profile built by analyzing an individual's online and on-device activity, businesses and retailers like Nuna target specific, individual consumers with advertisements that are likely to be relevant to their interests,

---

[12] *See, e.g.*, https://www.nhtsa.gov/car-seat/NUNA/RAVA/a__4248717 complaint dated February 21, 2023 noting the RAVA's "10 year expiration date"), *last accessed March 27, 2025*; https://community.babycenter.com/post/a75754862/nuna-rava-worth-the-hype (comment asking: "Will [the RAVA Car Seat] make it the 10 years as advertised?"), *last accessed March 27, 2025.*
[13] https://nunababy.com/usa/rava-convertible-car-seat?srsltid=AfmBOopFQv7moc_ChKyNB1t307uXOhlKevl9vL5n2UkBZWWGHOm3yHe1&color_ref=16957, *last accessed March 26, 2025.*

such as expecting parents. As any new parent knows, targeted advertising is particularly prevalent in the market for baby products, such as car seats.

23.     As evidenced by the supremacy of safety considerations in its marketing, Defendant



Unique safety features

 

**A.** True tension™ doors ensure an ultra-secure fit in vehicle without the struggle.

**B.** Bubble-free installation—Designed and engineered to give you the ability to choose your preferred recline angle without the need for a bubble indicator.

  

**C.** Steel reinforced True lock™ and rigid latch—True lock™ installation makes set up swift, simple and above all—safe.

**D.** Aeroflex™ side impact protection—Aeroflex™ foam is cleverly lightweight, resilient, and minimizes force transferred to baby by absorbing and diffusing energy.

**E.** Multi-position steel stability leg reduces forward rotation of the car seat, absorbs impact, and minimizes forces transferred to the baby in the event of a vehicle crash.

knows that safety is the paramount consideration of parents purchasing a RAVA Car Seat. For example, Defendant boasts that "Nuna's luxurious car seats are engineered for growth keeping baby to 'tween safe at every stage. Combining safety with high design, Nuna's car seats are mindfully manufactured[.]"[14] In its "Car Seat Headquarters" webpage,[15] Defendant describes its purportedly top-of-the-line safety features at length:

24.     But all of these highly-marketable safety innovations are for naught if the RAVA Car Seat fails to perform a car seat's most basic function: keeping children buckled in the seat.

---

[14] https://nunababy.com/usa, *last accessed March 26, 2025.*
[15] https://nunababy.com/usa/us-car-seat-headquarters, *last accessed March 26, 2025.*

**B.    The RAVA Car Seat Defect and Recall**

25.    On December 20, 2024, Nuna instituted a "voluntary recall" for 600,000 RAVA Car Seats manufactured between July 16, 2016 and October 25, 2023.[16]

26.    This Recall concerns a "loose harness [that] may not properly restrain the occupant, increasing the risk of injury in a crash."[17]

27.    Due to this Defect, debris that enters the area where the front harness adjuster button is located "may cause the teeth of the adjuster mechanism to no longer properly clamp onto the adjuster strap, resulting in the harness no longer remaining tight."[18]

28.    The Recall Notice states that, when the Defect manifests, consumers should immediately stop using the RAVA Car Seat.[19]

29.    Put differently, despite Defendant's representations about the safety of the RAVA Car Seat, the RAVAs do not meet the bare minimum standards of operating with the usual and expected level of safety due to the Defect in the RAVA's design. The RAVA Car Seat lacks a cover over the front harness adjuster button, which controls the tightness of the RAVA's straps. As a result, debris, including from snacks, toys, etc., that falls into the front harness adjuster area can "imped[e] the mechanism from properly clamping on the strap," causing the RAVA's straps to loosen.[20] Once the RAVA's straps are loosened, a child can crawl out of their car seat, or, in the case of a car accident, be seriously injured or even killed.

30.    This is an extremely dangerous Defect. As anyone familiar with children, or even well-versed in the Peanuts, will understand, children leave behind debris of all kinds—from

---

[16] Recall Notice; https://www.nbcnews.com/business/recall/nuna-baby-essentials-recalls-600000-rava-car-seats-due-harness-issue-rcna184990.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*

crumbs of puff snacks, to melted ice cream, to bits of tanbark and twigs—even under the watchful eye of a guardian. Every defective RAVA Car Seat is therefore likely to manifest the Defect at some point.



31.    Dr. Alisa Baer, a pediatrician and co-founder of The Car Seat Lady, an advocacy organization devoted to preventing children's injuries in cars, confirms this. "The looser the child is in the straps, the longer it takes to stop," she explained.[21] "You do not want to make contact with anything except your seat belt or car seat straps in a crash."[22]

32.    When dirt, crumbs, or other debris enter the harness adjuster, "children can accidentally loosen the car seat straps if they lean forward because the locking mechanism might not work[.]"[23]

33.    Moreover, Dr. Baer confirmed the obvious: "Children are not known for their neatness," meaning that the Defect is likely to manifest.[24]

34.    Consumers confirm this as well. For years, consumers have been complaining online and directly to Nuna of the RAVA Car Seat's straps coming loose even when tightened by the consumer. For example, the National Highway Traffic Safety Administration ("NHTSA") has seventeen (17) pages of complaints regarding the RAVA Car Seat, with consumers nationwide

---

[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*

complaining of the RAVA's loosening straps since late 2020, four years before Nuna initiated its

Recall.[25] The complaints include, e.g.,:

- "THE CONTACT WAS ABLE TO LOOSEN THE STRAPS WITH LITTLE EFFORT. THE CONTACT STATED THAT IN THE EVENT OF A CRASH, THE CHILD COULD EASILY SLIP OUT OF THE STRAPS."[26]

- "THE CONTACT STATED THAT WHILE ATTEMPTING TO SECURE THE CHILD IN THE CAR SEAT, IT WAS DISCOVERED THAT THE STRAP LOCKING MECHANISM WAS FAULTY AND WOULD NOT REMAIN SECURED. THE CAUSE OF THE FAILURE WAS NOT DETERMINED. THE MANUFACTURER AND DEALER WAS NOTIFIED OF THE FAILURE."[27]

- "We were leaving a car dealership to head home, my husband put our toddler in his car seat and after doing the pinch test, pulled on the chest buckle to make sure it was tight enough. When he pulled the chest buckle, it loosened both harness belts. We attempted the same scenario over 20 times and each time you could pull on the chest clip and retract both harness belts. Without pushing the button to retract. Nothing is stuck in the car seat as our child doesn't eat or drink in his seat. We uninstalled and reinstalled, opened the seat, etc and there is no issue that we could correct. Our son's life was in danger driving home last night. If we were to have gotten in an accident, the force of the crash would have jolted his body forward and loosened the harness."[28]

- "My child was secured in the car seat: chest clip, buckled, and the harness pulled to secure. Without pushing the release button, the harness comes loose when pulled . . . . If coming to an abrupt stop, my child may have come out of the seat."[29]

- "When the child is buckled in and the straps are all tight, they can be pulled loose without using the release button at the bottom. This is incredibly unsafe and would make this car seat useless if we were to be in a car accident. My car seat has not been inspected but the manufacturer has been notified."[30]

- "I am able to loosen the harness by lightly pulling on it without use of the harness release button. The harness is not holding the child in place and if there were an accident it would do nothing to protect him or keep him inside the vehicle. Nuna has been contacted and is replacing the car seat shell but advised this is a "courtesy" since it is outside of the 2 year warranty. It is ridiculous that this could ever happen especially since the car seat has a 10 year expiration date and a convertible car seat is supposed to last for years."[31]

---

[25] https://www.nhtsa.gov/car-seat/NUNA/RAVA/a__4248717, *last accessed March 27, 2025.*
[26] *Id.* (complaint dated December 31, 2020).
[27] *Id.* (complaint dated April 1, 2021).
[28] *Id.* (complaint dated August 9, 2021).
[29] *Id.* (complaint dated June 8, 2022).
[30] *Id.* (complaint dated July 13, 2022).
[31] *Id.* (complaint dated February 21, 2023).

- "I am able to loosen the harness by lightly pulling on it without use of the harness release button. The harness is not holding the child in place and if there were an accident it would do nothing to protect him or keep him inside the vehicle. Nuna has been contacted and is replacing the car seat shell but advised this is a "courtesy" since it is outside of the 2 year warranty. It is ridiculous that this could ever happen especially since the car seat has a 10 year expiration date and a convertible car seat is supposed to last for years."[32]

- "The contact owns a Nuna Rava car seat. The contact stated that the tether used to secure the child in the seat had become loosened. The contact stated that her child was able to pull the tether apart. The car seat had not been repaired. The manufacturer was made aware of the failure and opened a case."[33]

- "When the harness is fully tightened and secure my child can easily loosen it by pushing on it. I have sent a video to Nuna for review. If we were in an accident the harness could fully loosen and my child could be propelled out of the seat."[34]

- "When the harness is fully tightened and secure my child can easily loosen it by pushing on it. I have sent a video to Nuna for review. If we were in an accident the harness could fully loosen and my child could be propelled out of the seat. We've discontinued use of the seat and are awaiting Nuna's response."[35]

- "My Nuna Rava car seat will not secure my child. The straps will not lock, and are coming loose with the slightest tug on the chest clip. Our 2 year old child can pull the straps loose. I hate to think about what would happen if we were in an accident. I contacted Nuna for a refund, and was informed they would be unable to process returns on behalf of a retail partner. I do not feel like Nuna Rava is a safe car seat for my children. There are 25 complaints on NHTSA, and many seem to be about the same issue. This is also the second Nuna Rava car seat I've personally had to file report on that is defective. We've had five total. Two out of five malfunctioning in the same way is very concerning. I'm hoping these get recalled. I can't believe they haven't already. I just hope a child doesn't get seriously hurt, before action is taken."[36]

- "Harness suddenly started to loosen by itself without pushing on the release mechanism. Extremely dangerous as child is not restrained at all when this happens. After doing some research online, it appears that there may be something stuck in the release mechanism area, but there is no easy way to get to the area to clean it. (Only way is to unscrew the bottom portion of the car seat - which a Nuna representative has said they do not advise doing and also is impractical if you are not at home and have a screwdriver nearby.)"[37]

- "Problem occurred after several months of use. The chest straps will not consistently lock into position, despite the release button not being engaged. They can easily be pulled to loosen again. This does not secure the child into

---

[32] *Id.* (complaint dated February 18, 2023).
[33] *Id.* (complaint dated June 10, 2023).
[34] *Id.* (complaint dated August 10, 2023).
[35] *Id.* (complaint dated August 15, 2023).
[36] *Id.* (complaint dated December 21, 2023).
[37] *Id.* (complaint dated July 16, 2024).

the seat. We have ensured that the strap mechanism is not clogged with debris. We have submitted a claim to the Nuna company."[38]

35.    On March 21, 2024, a consumer submitted a letter to NHTSA petitioning NHTSA to open a recall for the RAVA Car Seat, stating: "the car seat harness can be loosened completely without pressing on the harness release button. This harness would not be able to restrain a child at all in case of a crash."[39]

36.    Consumers have complained to NHTSA and to Nuna since at least December 2020, as noted in these NHTSA complaints.

37.    Consumers have complained directly to Nuna through other means as well. For example, one consumer stated in an online forum in 2021 that they had reported the loosening straps to both NHTSA and Nuna. In response, "Nuna sent me a new seat and said sometimes crumbs or sand can get inside of the seat. Tiny particles can get on the tightening strap from shoes or whatever and when you loosen the harness and the strap goes back inside, the lock traps the particles."[40] The consumer continued: "Yes so scary a cheerio or playground sand could be life or death for my kiddo. Toddlers are such messy creatures! No matter how hard us parents try to keep things clean."[41]

38.    Perhaps in response to consumer complaints regarding the dangerous Defect, Nuna began manufacturing a redesigned version of the RAVA Car Seat on October 25, 2023—one that included a cloth cover over the front harness adjuster button:

---

[38] *Id.* (complaint dated July 31, 2024).
[39] https://static.nhtsa.gov/complaints/11583786/11583786-0002.pdf
[40]
https://www.reddit.com/r/beyondthebump/comments/ko0ok5/nuna_rava_car_seat_harness_straps_loosen_when/, *last accessed Feb. 10, 2025*.
[41] *Id.*



39.    This is the exact remedy prescribed by the Recall.

40.    It is clear that Nuna knew about this potentially life-threateningly dangerous Defect for years before notifying the public of the serious risks use of the RAVA posed to infants and children for three reasons: (1) Nuna presumably began designing the redesigned RAVA Car Seat prior to beginning manufacturing, (2) consumers have repeatedly complained about his dangerous Defect since 2020, including directly to Nuna, and (3) Nuna has responded to many consumer complaints, including, but not limited to, Nuna's 2021 acknowledgement to consumers that "sometimes crumbs or sand can get inside of the seat[.]".

41.    This Defect renders the RAVA Car Seats worthless and unusable for their intended purpose of safely transporting babies, toddlers, and young children.

42.     Additionally, Plaintiff and Class Members substantially overpaid for the defective RAVAs, which have experienced a significant diminution in value and useful life due to this undisclosed Defect and Recall.

43.     Indeed, despite this dangerous Defect, the RAVA Car Seat is expensive—some commenters have called it "super expensive"[42]—compared to similar convertible car seats sold, for example, by Graco Baby for $199.99[43] and Evenflo for $349.98[44], meaning that consumers sometimes spend hundreds of dollars more for the RAVA Car Seat than for competitor car seats. Consumers, including Plaintiff, were willing to pay this higher price specifically because of the RAVA's reputation for safety and security. Unfortunately, they were sold an unsafe and defective car seat instead.

44.     Nuna was on notice of its obligations to provide a safe and Defect-free car seat to parents like Plaintiff and Class members for several reasons. As an initial matter, a car seat exists for the sole purpose of safely transporting infants, toddlers, and small children in a moving vehicle. Any car seat, like the RAVA Car Seat, that is not safe need not exist.

45.     And as Nuna is no doubt aware, federal regulations governing car seats are implemented to "reduce the number of children killed or injured in motor vehicle crashes." 49 C.F.R. § 571.213.

46.     Further, the particular Defect here is one that manufacturers and sellers of car seats, such as Nuna, should be aware of given prior recalls prompted by similar defects.[45]

---

[42] https://www.babygearlab.com/reviews/vehicle-safety/convertible-car-seat/nuna-rava, *last accessed March 26, 2025.*
[43] https://www.gracobaby.com/car-seats/toddler-car-seats/convertible-car-seats/extend2fit-convertible-car-seat/SAP_1963212.html, *last accessed March 26, 2025.*
[44] https://www.evenflo.com/products/revolve360-all-in-one-car-seat, *last accessed March 26, 2025.*
[45] *See, e.g.,* https://www.npr.org/sections/thetwo-way/2014/02/11/275506262/graco-recalls-nearly-3-8-million-child-car-seats#:~:text=toggle%20caption,affected%20consumers%20at%20no%20cost (Graco recall of

14

47.     Indeed, as NHTSA has warned companies in the past: "It is completely foreseeable that children will eat or drink while seated in their car seat and that some amount of these substances may enter the buckle."[46] For this reason, regulators do not "believe that food or drink contamination should create any buckle performance issues[.]"[47]

48.     For these and other reasons, Nuna was or should have been made aware of the Defect long before the announcement of the Recall by adequate pre-market product safety testing.

## C.     Nuna's Voluntary Recall Is Insufficient

49.     Nuna's subsequent Recall fails to make Plaintiff and Class Members whole. To the contrary, it is ineffective and inadequate for providing consumers with a meaningful remedy for purchasing the defective RAVA.

50.     As an initial matter, there was insufficient notice to impacted customers, leaving some parents to unknowingly continue using the dangerously defective RAVA Car Seat even after Nuna announced the Recall.

51.     Even once parents knew of the Recall, they were left with a dangerously defective Car Seat with no repair for months while awaiting the Cleaning Kits. Parents were forced to either

---

approximately 3.8 million car seats, with an additional 1.8 million car seats under review because "the buckles stop working properly when debris and liquids are dropped into them"); https://www.counton2.com/news/evenflo-recalls-convertible-car-seats-due-to-safety-concerns/ (Evenflo recall of car seats due to "buckle which may become resistant to unlatching over time, due to exposure to various contaminants (like food and drinks)"); https://babytrend.com/pages/safety-notices#:~:text=Baby%20Trend%20is%20providing%20customers%20who%20own%20the%20TrendZ%20Fastback,to%20install%20the%20new%20buckle. (Baby Trend recall of car seats due to "buckle which may become resistant to unlatching over time, due to exposure to various contaminants (like food and drinks)"); *see also*, *e.g.*, *Long v. Graco Children's Prods. Inc.*, No. 13-CV-01257- WHO, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) (case involving a children's car seat that failed to *un*buckle when debris was introduced to the locking mechanism).

[46] https://www.wral.com/story/graco-recalls-nearly-3-8-million-car-seats/13382063/, *accessed* June 25, 2025.
[47] *Id.*

continue use of the expensive but dangerous RAVA Car Seats, or to replace them out of their own pockets while awaiting the Cleaning Kit.

52.    Even for those consumers who have received the Cleaning Kits, such Cleaning Kits fail to make Plaintiff and Class Members whole because the Cleaning Kits do not address Plaintiff's and Class Members' overpayment for or diminution in value of the RAVA Car Seat. No reasonable consumer would purchase a $550 car seat that does not safely fasten, and that instead endangers their child. Nuna was able to demand such a high price only by misleadingly advertising the RAVA as safe and by failing to notify the public of the dangerous Defect.

53.    Further, Nuna failed to recall the entire RAVA Car Seat and instead only advised consumers to clean and replace certain portions of it. By failing to recall the entire RAVA Car Seat, the Recall allows and encourages consumers to continue to use a car seat with the risk of severe injury, and without the benefit of a professional repair.

54.    Instead of recalling the RAVA, offering professional repair of the RAVA, and/or providing consumers with a refund, Nuna offers the Cleaning Kit to ensure the car seat's harness adjuster is kept clean and working properly. Given that Plaintiff and Class Members are expected to thoroughly clean their own RAVA Car Seat—something which consumers report can be accomplished only with the aid of a screwdriver[48]—and install Nuna's purported repair themselves, these modifications significantly diminish the RAVA's value as a "high-end," premium, or luxury product.

---

[48] *See, e.g.*, https://www.nhtsa.gov/car-seat/NUNA/RAVA/a__4248717 (complaint dated July 16, 2024). https://www.reddit.com/r/beyondthebump/comments/ko0ok5/nuna_rava_car_seat_harness_straps_loosen_when/ (describing cleaning RAVA Car Seat "by removing two screws under the leg rest. Once opened I found all sorts of gunk that was restricting the friction on the latch.").

55.     For the same reason, the Recall burdens consumers who are already living busy lives caring for their children and are not trained or experienced in designing or repairing car seats, unlike Defendant.

56.     Further, Nuna advises consumers to immediately stop use of the RAVA Car Seat if the Defect manifests because it creates a substantial safety risk. Parents who need to transport their child are therefore forced to either subject their child to danger or to obtain another car seat that will (unlike the RAVA) safely transport their child during the months Nuna took to send consumers the promised Cleaning Kits, thereby incurring further monetary damages for which Nuna is responsible.

57.     Moreover, the purported repair does not even appear to be available to all consumers at this time. Plaintiff Baig, for instance, has yet to receive the Cleaning Kits he has requested.

58.     Indeed, Nuna states in its Recall Notice that they will send (only to consumers who specifically request) a letter to "notify owners when the seat pad and cleaning kit are available."[49] It is not clear when that will be.

59.     Nuna's false and misleading marketing of the dangerous RAVA Car Seat, and its knowing failure over *years* to disclose the grave risks of allowing children to use the RAVA Car Seat, allowed Nuna to reap vast profits at the expense of ordinary consumers who erroneously believed their infants and children were safe in Nuna's "premium" car seat.

60.     Every RAVA Car Seat suffers from the uniform Defect, which, unknown to consumers but known to Nuna, exists at the point of purchase and poses an unreasonable safety hazard to infants and children. As such, Plaintiff and Class Members are victims of the unfair bargaining power between them and the Defendant based on Nuna's superior industry knowledge.

---

[49] Recall Notice.

## **PLAINTIFF'S ALLEGATIONS**

61.     Plaintiff Mirza Baig resides in the State of Virginia.

62.     Mr. Baig has purchased a total of three RAVA Car Seats: two from Nordstrom for $550.00 each and one from Saks Fifth Avenue for $423.99.

63.     Two of Mr. Baig's RAVA Car Seats have a model number of CS05103GRN and were manufactured on December 16, 2022 in Morgantown, PA. Their serial numbers are 1098330 and 1098325. Mr. Baig's third RAVA Car Seat has a model number of CS05103CVR, serial number of 0505182, and was manufactured on June 19, 2023 in Morgantown, PA.

64.     All three purchases were made in the state of Virginia.

65.     Mr. Baig was not aware of the Defect in the RAVA Car Seat, or the truth (or lack thereof) of Nuna's representations regarding the RAVA and its safety, until Nuna published the Recall Notice, over two years after Mr. Baig initially purchased the RAVA.

66.     Mr. Baig did extensive research into which car seat to purchase for his child, including looking at labels, packaging, advertisements, and online reviews before choosing the RAVA Car Seat.

67.     Around the time of his purchase, Mr. Baig was targeted by Nuna with advertisements on Facebook regarding the RAVA Car Seat.

68.     Based on Nuna's misleading statements, he believed that the RAVA was the safest car seat on the market. Moreover, the high price of the RAVA caused Mr. Baig to believe the RAVA would be safe.

69.     Mr. Baig was also enticed to purchase the RAVA Car Seat based on Nuna's promise that it would last 10 years.

70.     Mr. Baig soon realized that the RAVA Car Seat was not, in fact, safe. Approximately 9 months after purchasing the RAVA Car Seat, the straps began coming loose on the RAVA Car Seats, sometimes leaving his children insecurely fastened.

71.     Mr. Baig has had to expend extra time and attention on a daily basis to ensure that the straps on his three RAVA Car Seats are not dangerously loose.

72.     Mr. Baig also owns a similar Graco car seat, which does not suffer from loosening straps.

73.     Notably, Mr. Baig only happened to learn of the Recall. He never received formal notice from Nuna of the Recall. Thus, had he not been fortunate enough to happen to hear of this Recall, he likely would never have learned of the Defect and inherent dangers of the RAVA Car Seat.

74.     Following his discovery of the Recall, Mr. Baig completed the online form for the Recall and learned that the offered remedy was a new seat pad, cleaning kit, and care instructions.

75.     The remedy Nuna has offered through the Recall—that is, providing a new seat pad, cleaning kit, and care instructions—is illusory, and, in any event, entirely insufficient. The purported remedy, even if actually provided, does not actually address the Defect or make the RAVA Car Seat safe, and it certainly does not remedy the false representations and omissions Nuna has made regarding the RAVA, which enticed Mr. Baig to overpay in the first place. It does not make Mr. Baig whole.

76.     Moreover, to date, Mr. Baig has not received the new seat pad, cleaning kit, or care instructions.

77.     Mr. Baig would not have purchased a RAVA Car Seat, or would have sought materially different terms, had he known these Car Seats were defective and not as safe as

Defendant represented. Defendant's misrepresentations and omissions were substantial factors in Plaintiff's decisions to purchase the RAVA Car Seat.

## TOLLING

### A.    Continuing Act Tolling

78.    Nuna continued to market and sell the dangerously defective RAVA Car Seat long after consumers began complaining that it was unsafe. Despite evidence to the contrary, Nuna continuously represented that the RAVA is safe and suitable for securing children and infants while driving.

79.    By continuously repeating false representations and failing to disclose that the RAVA contains a uniform and dangerous Defect, Nuna engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Nuna might seek to apply.

80.    Specifically, as the creator, designer, and manufacturer of the RAVA, Nuna has had actual knowledge likely since at least 2016, and certainly since at least 2021, when consumers began complaining of the Defect online and directly to Nuna, that the RAVA is defectively designed and exposes infants and children to risk of injury and even death.

81.    Moreover, Nuna began manufacturing a redesigned version of the RAVA Car Seat on October 25, 2023—one that included a cloth cover over the front harness adjuster button— which Nuna presumably began designing months if not years before it began manufacturing it. This further reveals Nuna's ongoing knowledge of the Defect, and ongoing failure to disclose the Defect to the public.

82.    Nonetheless, Nuna issued the Recall only in December of 2024—*four years* after Nuna first became aware of the Defect via customer complaints, and fourteen months after it began manufacturing the re-designed, (presumably) Defect-free RAVA.

83.     Thus, at all relevant times, Nuna indisputably possessed continuous knowledge of the material dangers posed by the RAVA, and yet Nuna knowingly continued to allow the sale of the RAVA. Plaintiff's and Class Members' claims are not time barred.

84.     Moreover, even after the Recall was initiated, there is no evidence that Nuna's Recall Notice has reached all owners of the RAVA Car Seats.

85.     Plaintiff and Class Members could not have reasonably discovered and could not have known of these facts, which Nuna publicly disclosed for the first time mere months ago. Indeed, until it issued the Recall, Nuna knowingly failed to disclose material information regarding the existence of the Defect in all RAVAs manufactured before October 25, 2023. Accordingly, no potentially relevant statute of limitations should apply.

**B.     Fraudulent Concealment Tolling**

86.     Any applicable statutes of limitations have been tolled or have not run for the additional reason that Nuna knowingly, actively, and fraudulently concealed the facts as alleged herein. Nuna had actual and constructive knowledge of the potentially fatal Defect in the RAVA Car Seat for, *at minimum*, fourteen months before announcing the Recall.

87.     Plaintiff and Class Members have been kept in ignorance of information essential to the pursuit of their claims, and the safety of their children, without any fault or lack of diligence on their part. Nuna's concealment of the Defect in the RAVA before, during, and after the purchases of Plaintiff's RAVA Car Seats prevented him from being on notice of any facts or information that would have required them to inquire whether Nuna fulfilled its duties under the law and, if not, whether Plaintiff and Class Members had legal recourse.

88.     At all times prior to, during, and since the purchase of Plaintiff's and Class Members' RAVA Car Seats, Nuna has been under a continuing duty to disclose the true facts regarding the safety Defect in the RAVA. Because of Nuna's willful concealment of material

information concerning the RAVA over a period of years, Nuna is estopped from relying on any statute of limitations defense as to the claims of Plaintiff and Class Members.

**C.     Discovery Rule Tolling**

89.     Plaintiff and Class Members could not have discovered through the exercise of reasonable diligence that their RAVA Car Seats were defective within the time period of any applicable statutes of limitation because, as described herein, only Nuna had that information, and Nuna was concealing that information from the public.

90.     Indeed, Plaintiff first became aware of the RAVA's dangerous Defect and safety risks when they learned of the Defect's existence through Nuna's Recall (for which many Class Members have still yet to formal notice).

91.     Plaintiff and other Class Members could not have reasonably discovered, and could not have known of facts that would have caused a reasonable person to suspect, that Nuna was manufacturing and marketing the RAVA Car Seat despite being aware it contained a dangerous Defect.

92.     As such, no potentially relevant statute of limitations should be applied.

**<u>CLASS ALLEGATIONS</u>**

93.     Pursuant to Rule 23(a), (b)(2), and (b)(3), Plaintiff brings this action on behalf of himself and others similarly situated.

94.     Plaintiff seeks to represent a Nationwide class, defined as: "All persons in the United States who purchased (not for resale) a RAVA Car Seat manufactured between July 16, 2016 and October 25, 2023 (the "Class")."

95.     Plaintiff Baig also seeks to represent a Subclass defined as: "All persons in Virginia who purchased (not for resale) a RAVA Car Seat manufactured between July 16, 2016, to October 25, 2023 (the "Virginia Subclass")."

96.     At this time, Plaintiff does not know the exact number of members of the Class or Virginia Subclass; however, given the nature of the claims and the number of retail stores in the United States selling the RAVA Car Seats, Plaintiff believes that members of the Class and Subclass are so numerous that joinder of all members is impracticable.

97.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class and Subclass that predominate over questions that may affect individual Class Members include:

- Whether Defendant's conduct was unfair, deceptive, and/or misleading under applicable law;

- whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this First Amended Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Class and Subclass;

- whether Defendant breached its express and/or implied warranties to Plaintiff and the Class and Subclass;

- whether Plaintiff and the Class and Subclass have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages;

- whether Defendant made negligent representations with regards to the RAVA Car Seats; and

- whether Defendant has violated the state consumer protection laws alleged in this complaint.

98.     Plaintiff's claims are typical of those of the Class and Subclass because Plaintiff, like all members of the Class and Subclass, purchased and used, in a typical consumer setting, Defendant's RAVA Car Seat and Plaintiff sustained damages from Defendant's wrongful conduct.

99.     Plaintiff will fairly and adequately protect the interests of the Class and Subclass and has retained counsel that is experienced in litigating complex consumer protection class actions. Plaintiff has no interests which conflict with those of the Class or the Subclass.

100.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

101.    The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, thereby making appropriate equitable relief with respect to the Class and Subclass as a whole.

102.    The prosecution of separate actions by members of the Class and Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class and Subclass even where certain Class Members are not parties to such actions.

## <u>COUNT I</u>
**Pennsylvania Unfair Trade Practices and Consumer Protection Law
73 Pa. Cons. Stat. §§ 201-2 & 201-3, *et seq*.
(on behalf of Plaintiff and a Nationwide Class)**

103.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of this complaint as though fully set forth herein.

104.    Plaintiff brings this claim individually and on behalf of members of the Nationwide Class.

105.    Nuna is a "person," as meant by 73 Pa. Cons. Stat. § 201-2(2).

106.    Plaintiff purchased goods and services in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family, and/or household purposes.

107.    Nuna engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce in violation of 73 Pa. Cons. Stat. § 201-3, including the following:

      a.    Representing that its goods and services have characteristics, uses, benefits, and qualities that they do not have (73 Pa. Stat. § 201-2(4)(v));

      b.    Representing that its goods and services are of a particular standard or quality if they are another (73 Pa. Stat. § 201-2(4)(vii)); and

      c.    Advertising its goods and services with intent not to sell them as advertised (73 Pa. Stat. § 201-2(4)(ix)).

108.    Nuna's representations and omissions were material because they were likely to deceive reasonable consumers.

109.    Nuna intended to mislead Plaintiff and induce him to rely on its misrepresentations and omissions.

110.    Nuna misrepresented to Plaintiff and Nationwide Class members the safety and reliability of the RAVA Car Seat and failed to inform them of a serious safety Defect, in violation of its duty to consumers. Plaintiff and the Nationwide Class members acted reasonably in relying on Nuna's misrepresentations and omissions, the truth of which they could not have discovered.

111.    Nuna acted intentionally, knowingly, and maliciously to violate Pennsylvania Unfair Trade Practices and Consumer Protection Law, and recklessly disregarded Plaintiff's and Nationwide Class members' rights. Nuna's knowledge that the RAVA Car Seat contained a serious safety Defect put it on notice that the RAVA Car Seat was not as it was advertised.

112.    As a direct and proximate result of Nuna's unfair methods of competition and unfair or deceptive acts or practices and Plaintiff's and the Nationwide Class's reliance on them,

Plaintiff and Nationwide Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the RAVA Car Seat.

113.    Plaintiff and Nationwide Class members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $100 (whichever is greater), treble damages, attorneys' fees and costs, and any additional relief the Court deems necessary or proper.

<u>**COUNT II**</u>
**Breach of the Implied Warranty of Merchantability**
**(on behalf of Plaintiff and a Nationwide Class)**

114.    Plaintiff incorporates by reference and re-alleges all prior paragraphs of this complaint as though fully set forth herein.

115.    Plaintiff brings this claim individually and on behalf of members of the Class. In the alternative, Plaintiff brings this claim on behalf of the Virginia Subclass.

116.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the RAVA Car Seats are merchantable as a convertible car seat for infants and children.

117.    Defendant breached the warranty implied in the contract for the sale of the RAVA Car Seat because it could not "pass without objection in the trade under the contract description," the goods were not "of fair average quality within the description," the goods were not "adequately contained, packaged, and labeled as the agreement may require," and the goods did not "conform to the promise or affirmations of fact made on the container or label." *See* U.C.C. § 2-314(2) (listing requirements for merchantability). As a result, Plaintiff and Class Members did not receive the goods as impliedly warranted by Defendant to be merchantable.

118.    Plaintiff and Class Members purchased the RAVA Car Seats relying on Defendant's skill and judgment in properly packaging and labeling the RAVA Car Seats.

119.    The RAVA Car Seats were not altered by Plaintiff or Class Members.

120.    The RAVA Car Seats were defective when they left the exclusive control of Defendant.

121.    Defendant knew that the RAVA Car Seats would be purchased and used without additional testing by Plaintiff and Class Members.

122.    The RAVA Car Seats were defectively designed and unfit for their intended purpose and Plaintiff and Class Members did not receive the goods as warranted.

123.    Any attempt by Defendant to disclaim or limit its implied warranties is unconscionable and unenforceable under the circumstances here. Defendant knew or should have known that the RAVA Car Seats did not and would not have the represented capabilities; Defendant had unequal bargaining power and misrepresented the reliability, quality, performance, and qualities of the RAVA Car Seats; and any limited remedies unreasonably favor Defendant and fail Plaintiff's reasonable expectations concerning product performance.

124.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class Members have been injured and harmed because they would not have purchased the RAVA Car Seats if they knew the truth about the RAVAs, and because the car seats they received were worth substantially less than the Car Seats they were promised and expected.

125.    On behalf of themselves and other members of the class, Plaintiff seeks damages.

### COUNT III
### Breach of Express Warranty
### (on behalf of Plaintiff and a Nationwide Class)

126.    Plaintiff incorporates by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

127.    Plaintiff brings this claim individually and on behalf of members of the Class. In the alternative, Plaintiff brings this claim on behalf of the Virginia Subclass.

128.    Defendant was at all relevant times a merchant involved in the manufacturing, distributing, warranting, and/or selling of the RAVA Car Seat.

129.    Plaintiff and the Class formed contracts with Defendant at the time they purchased their RAVA Car Seats. The terms of that contract include that the Nuna would repair or replace a product that shows a "defect in materials or workmanship."[50] This warranty became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class, on the one hand, and Defendant, on the other.

130.    Defendant breached the terms of these contracts, including the express warranties, by failing to provide a RAVA Car Seat that provided the benefits advertised by Defendant— namely, a car seat that is safe for transporting infants and toddlers.

131.    Any attempt by Defendant to disclaim or limit its express warranties is unconscionable and unenforceable under the circumstances here. Defendant knew or should have known that the RAVA Car Seats did not and would not have the represented capabilities; Defendant had unequal bargaining power and misrepresented the reliability, quality, performance, and qualities of the RAVA Car Seats; and any limited remedies unreasonably favor Defendant and fail Plaintiff's reasonable expectations concerning product performance.

132.    Any purported warranty limitations excluding or limiting (a) labor and costs of labor and (b) incidental and consequential damages, are also procedurally and substantively unconscionable and thus fail under UCC § 2-302 and relevant state law.

133.    Plaintiff and the Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of

---

[50] https://nunababy.com/en/warranty, *accessed* June 25, 2025.

Nuna's conduct described herein. Plaintiff and the Class members were not required to notify Nuna of the breach because it would have been futile.

134.    As a direct and proximate cause of Defendant's breach of the express warranty, Plaintiff and Class Members have been injured and harmed because they would not have purchased the RAVA Car Seats if they knew the truth about the RAVAs and that the RAVAs they received were worth substantially less than the Car Seats they were promised and expected.

135.    On behalf of themselves and other members of the class, Plaintiff seeks damages.

## COUNT IV
### Breach of the Magnuson-Moss Warranty Act
### 15 U.S.C. §§ 2301, *et seq.*
### (on behalf of Plaintiff and a Nationwide Class)

136.    Plaintiff incorporates by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

137.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant. In the alternative, Plaintiff brings this claim on behalf of the Virginia Subclass.

138.    Plaintiff and the other Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

139.    Nuna is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4)-(5).

140.    The RAVA Car Seats are "consumer products" within the meaning of § 2301(1).

141.    Nuna's express warranty is a "written warranty" within the meaning of § 2301(6).

142.    As detailed above, Nuna breached its warranty obligations by failing to provide a product that conformed to the promises and affirmations Nuna made about the RAVA Car Seats, by failing to truthfully advertise and warrant that the RAVA Car Seats were safe, free of defect, and fit for their intended purpose. The Defect in the RAVA Car Seats existed at the time the RAVA

Car Seats left Nuna's control and Nuna failed to disclose the existence of the Defect either prior to, at the point of, or following sale of the RAVAs, including when customers contacted Nuna to inquire about the RAVA's failures. Nuna's conduct has rendered the warranties null and caused them to fail of their essential purpose.

143.    Nuna's breach of warranty deprived Plaintiff and Class Members of the benefit of their bargain.

144.    The amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

145.    Further, pursuant to the provisions of 15 U.S.C. § 2310(e), Plaintiff, on behalf of himself and Class Members, sent notice to Nuna to provide it with reasonable opportunity to correct its business practices and cure its breach of warranties under the MMWA.

146.    Any attempt by Defendant to disclaim or limit its warranties is unconscionable and unenforceable under the circumstances here. Defendant knew or should have known that the RAVA Car Seats did not and would not have the represented capabilities; Defendant had unequal bargaining power and misrepresented the reliability, quality, performance, and qualities of the RAVA Car Seats; and any limited remedies unreasonably favor Defendant and fail Plaintiff's reasonable expectations concerning product performance.

147.    In addition, resorting to any sort of informal dispute settlement procedure or affording Nuna another opportunity to cure its breach of warranty is unnecessary and futile. Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Nuna has repeatedly mispresented the true quality and nature of the RAVA Car Seat, and has indicated no desire to participate in such a process at this time. Any requirement under the MMWA or otherwise that Plaintiff submits to any informal dispute settlement procedure

or otherwise afford Nuna reasonable opportunity to cure its breaches of warranty is excused and/or has been satisfied.

**COUNT V**
**Unjust Enrichment**
**(on behalf of Plaintiff and a Nationwide Class)**

148.    Plaintiff incorporates by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

149.    Plaintiff brings this claim individually and on behalf of members of the Class against Defendant. In the alternative, Plaintiff brings this claim on behalf of the Virginia Subclass.

150.    Plaintiff and Class Members conferred benefits on Defendant by purchasing the RAVA Car Seat.

151.    Defendant has knowledge of such benefits.

152.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the RAVA Car Seat. Retention of those monies under these circumstances is unjust and inequitable because Defendant represented that the RAVA Car Seat are safe for its principal use of safely transporting children when it is not.

153.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class Members for their unjust enrichment, as ordered by the Court.

**COUNT VI**
**Negligent Misrepresentation**
**(on behalf of Plaintiff and a Nationwide Class)**

154.    Plaintiff incorporates by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

155.    Plaintiff brings this claim individually and on behalf of the members of the Class. In the alternative, Plaintiff brings this claim on behalf of the Virginia Subclass.

156.    As discussed above, Defendant represented that the RAVA Car Seats are safe for their principal use of safely transporting children. However, Defendant failed to disclose that the RAVA Car Seats are not safe and use of the RAVA Car Seats could cause severe injury or even death to an infant or child while using the RAVA.

157.    At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

158.    At an absolute minimum, Defendant negligently misrepresented material facts about the safety of the RAVA Car Seats.

159.    The negligent misrepresentations made by Defendant, upon which Plaintiff and the Class reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and the Class to purchase the RAVA Car Seats.

160.    The negligent actions of Defendant caused damage to Plaintiff and the Class, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VII
### Violations of the Virginia Consumer Protection Act,
### Virginia Code § 59.1-196, *et seq*.
### (on behalf of the Virginia Subclass)

161.    Plaintiff incorporates by reference and re-allege all prior paragraphs of this complaint as though fully set forth herein.

162.    Plaintiff Baig brings this claim on behalf of himself and the Virginia Subclass.

163.    Plaintiff and the Class Members are consumers that purchased, via a "consumer transaction," "children's products" and "goods" in the form of the RAVA Car Seat from Defendant Nuna, which is a "supplier" within the meaning of Virginia Code § 59.1-198. The application of the Virginia Consumer Protection Act to the putative Class in this action is appropriate because

Defendant's wrongful conduct alleged herein, includes but is not limited to Defendant's marketing and sale of defective, unsafe RAVA Car Seats in the state of Virginia.

164.    Defendant violated § 59.1-200 of the Virginia Consumer Protection Act by representing that the RAVA Car Seat has characteristics, uses or benefits, which it does not have, is of a particular standard, quality, or grade, even though it is of another, and by advertising the RAVA for sale despite it having a "defect[]," "blemish[]," or "imperfect[ion]" that is not clearly and unequivocally indicated in the advertisements for the RAVA Car Seat. Such conduct includes, among other things:

      a.    Designing, manufacturing, marketing, and selling the RAVA Car Seat consumers that contained material, fundamental defects without disclosing such defects to consumers;

      b.    Marketing and selling the RAVA Car Seat when it was not merchantable for the purpose of providing safe transportation for infants and small children;

      c.    Marketing and selling the RAVA Car Seat while concealing material facts from Plaintiff and Class Members regarding the defects in the RAVA Car Seats that would manifest both within and outside their express or implied warranty periods that would create a safety risk for Plaintiff and Class Members who purchased the RAVAs to provide safe and reliable transportation for their infants and small children;

      d.    Concealing from Class Members that Defendant was in breach and intended to breach its warranty obligations as set forth in this complaint.

165.    In making and disseminating the statements alleged herein, Defendant knew or should have known its advertisements were deceptive and misleading. Plaintiff and members of the Virginia Subclass based their decisions to purchase and use Defendant's RAVA Car Seat on Defendant's misrepresentations and omissions of material facts.

166.    Plaintiff and Virginia Subclass members are entitled to relief, including enjoining Defendant to cease and desist from engaging in the practices described herein, as well as a declaration of rights that Defendant's safety claims are deceptive and misleading.

167.    Plaintiff additionally seeks restitution and damages as a result of Defendant's unlawful conduct, as well as attorneys' fees and costs of suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment individually, and on behalf of himself, and members of the Class, as follows:

A.    For an order certifying the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representatives of the Class and Subclass, and Plaintiff's attorneys as Class Counsel;

B.    For an order declaring that Defendant's conduct violates the statutes referenced herein;

C.    For an order finding in favor of Plaintiff, the Class, and/or the Subclass on all counts asserted herein;

D.    For actual, compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.    For injunctive relief enjoining the illegal acts detailed herein;

F.    For prejudgment interest on all amounts awarded;

G.    For an order of restitution and all other forms of equitable monetary relief;

H.    For an order awarding Plaintiff, the Class, and Subclass their reasonable attorneys' fees and expense and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: June 30, 2025                    Respectfully submitted,


By: */s/ Charles E. Schaffer*
         Charles E. Schaffer

**LEVIN SEDRAN & BERMAN LLP**
Charles E. Schaffer
Nicholas J. Elia
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
cschaffer@lfsblaw.com
nelia@lfsblaw.com

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (*pro hac vice* forthcoming)
Matthew B. George (*pro hac vice* forthcoming)
Blair E. Reed (*pro hac vice* forthcoming)
Clarissa R. Olivares (*pro hac vice* forthcoming)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
mgeorge@kaplanfox.com
breed@kaplanfox.com
colivares@kaplanfox.com

*Attorneys for Plaintiff*