**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MIRZA BAIG, individually and on behalf of all others similarly situated, | Civil Action No. 5:25-cv-03327-JLS |
| Plaintiff, | |
| v. | **DEFENDANT, NUNA BABY ESSENTIALS, INC. MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |
| NUNA BABY ESSENTIALS, INC., | |
| Defendant. | |

**DEFENDANT, NUNA BABY ESSENTIALS, INC.'S MEMORANDUM OF LAW IN
<u>SUPPORT OF MOTION TO DISMISS</u>**

Defendant, Nuna Baby Essentials, Inc., (hereinafter "Nuna"), hereby submits the following

Memorandum of Law in Support of Motion to Dismiss and avers as follows:

# Table of Contents

**I.  INTRODUCTION**.....................................................................Error! Bookmark not defined.

**II. FACTUAL ALLEGATIONS**.......................................................Error! Bookmark not defined.

**III.LEGAL STANDARD** .................................................................Error! Bookmark not defined.

**IV.ARGUMENT**...........................................................................Error! Bookmark not defined.

    **A.  Plaintiff Lacks Standing Because he has not Pleaded an Injury in Fact.**............Error! Bookmark not defined.

    **B.  The Claims Should be Mooted by the NHTSA-Backed Recall**.....Error! Bookmark not defined.

    **C.  Plaintiff's Breach of Warranty Claims Fail.  (Counts II-IV)**........Error! Bookmark not defined.

        **1.  The Implied Warranty of Merchantability Claim Fails.  (Count II)**.............Error! Bookmark not defined.

        **2.  The Express Warranty Claim Fails.  (Count III)**........Error! Bookmark not defined.

        **3.  The Magnuson-Moss Warranty Act ("MMWA") Claim Fails. (Count IV)**..Error! Bookmark not defined.

    **D.  Plaintiff Fails to Plead Fraud-Based Negligent Misrepresentation and State Consumer Protection Claims.  (Counts I, V and VI)**........Error! Bookmark not defined.

        **1.  Plaintiff Alleges No Actionable Misrepresentations.**...Error! Bookmark not defined.

        **2.  Plaintiff Fails to Plausibly Allege Reliance.**..................Error! Bookmark not defined.

        **3.  Plaintiff's Omission-Based Claims Fail.**.......................Error! Bookmark not defined.

        **4.  Plaintiff's Negligent Misrepresentation Claim Fails. (Count VI).**Error! Bookmark not defined.

    **E.  Plaintiff Fails to State a Claim for Unjust Enrichment.  (Count V)**...Error! Bookmark not defined.

    **F.  Plaintiff Fails to Plead a Basis for Punitive Damages**.......Error! Bookmark not defined.

**V.  CONCLUSION** ...........................................................................Error! Bookmark not defined.

i

## Table of Authorities

**Cases**                                                                          **Page(s)**

*Allen v. FCA US LLC*, 2017 U.S. Dist. LEXIS 71603 (W.D. Va. 2017) ......................................................... 17

*Amato v. Subaru of Am., Inc.*, No. 18-16118, 2019 WL 6607148 (D.N.J. Dec. 5, 2019) .................................. 15

*Baker v. Elam*, 883 F. Supp. 2d 576 (E.D. Va. 2012) ................................................................................... 22

*Barrigan v. Elite Funding, No. CIV. A. 07-0951*, 2009 WL 54514 (E.D. Va. Jan. 6, 2009) ................................. 22

*Beck v. FCA US LLC*, 273 F. Supp. 3d 735 (E.D. Mich. 2017) ....................................................................... 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................................ 4

*Bolton v. Ford Motor Co.*, 2024 WL 3328522 (D. Del. July 8, 2024) ................................................................ 7

*Brown v. Buhman*, 822 F.3d 1151 (10th Cir. 2016) ..................................................................................... 6

*Bui v. Koons of Tysons Corner Inc., No. 22-cv-387* (RDA/IDD), 2023 WL 4671212 (E.D. Va. July 20, 2023) ..... 23

*California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126 (3d Cir. 2004) ................................................ 2

*Cheng v. BMW of N. Am., LLC, No. CV 12-09262 GAF SHX*, 2013 WL 3940815 (C.D. Cal. July 26, 2013) ........ 8

*Coba v. Ford Motor Co.*, 932 F.3d 114 (3d Cir. 2019) ................................................................................... 12

*Cohen v. Subaru of Am., Inc., No. 1:20-cv-08442-JHR-AMD*, 2022 WL 721307 (D.N.J. Mar. 10, 2022) ............7, 8

*Comes v. Harbor Freight Tools USA, Inc.*, 2021 WL 6618816 (C.D. Cal. Sept. 29, 2021) ................................... 5

*Coyle v. JSL Mechanical, Inc.*, 2023 WL 5985273 (E.D. Pa. 2023) .................................................................. 18

*DeSimone v. U.S. Claims Servs., Inc., No. CV 19-6150*, 2020 WL 1164794 (E.D. Pa. Mar. 11, 2020) .................. 20

*Doe A.F. v. Lyft, Inc., No. CV 23-3990-KSM*, 2024 WL 3497886 (E.D. Pa. July 19, 2024) ................................ 22

*Fleischer v. Fiber Composites, LLC*, No. 12-1326, 2012 WL 5381381 (E.D. Pa. Nov. 2, 2012) .......................... 14

*Flores v. FCA US LLC*, No. 20-10972, 2021 WL 1122216 (E.D. Mich. Mar. 24, 2021) .............................12, 21

*In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066 (N.D. Cal., Mar. 12, 2014) ...................... 22

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ............................................................................. 4

*Fravel v. Ford Motor Co.*, 973 F. Supp. 2d 651 (W.D. Va. 2013) ............................................................15, 18

IMANAGE\11964\0004\52987793.v1-8/29/25

*Fusco v. Uber Technologies, Inc.*, No. 17-00036, 2018 WL 3618232 (E.D. Pa., 2018) ................................... 16, 17

*Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187 (3d Cir. 2009) ............................................................ 4

*Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275–83 (D.N.J. 2011) ............................................. 10

*Hadley v. Chrysler Grp., LLC*, 624 Fed. Appx. 374 (6th Cir. 2015) ..................................................................... 5

*Hadley*, 624 Fed. Appx. .......................................................................................................................... 5, 8, 9

*Hammerschmidt*, 583 F. Supp. 3d ............................................................................................................... 20

*Hlista v. Safeguard Props., LLC*, 649 F. App'x 217 (3d Cir. 2016) ..................................................................... 16

*Huertas v. Bayer US LLC*, 120 F.4th 1169 (3d Cir. 2024) ................................................................................... 4

*Hughes v. Panasonic Consumer Elecs. Co.*, No. CIV.A. 10-846 SDW, 2011 WL 2976839 (D.N.J. July 21, 2011) ... 10

*Ivanoff v. Walmart*, 2025 U.S. Dist. LEXIS 149634 at *90 (S.D. OH 2025) ....................................................... 21

*Johansson v. Cent. Garden & Pet. Co.*, 804 F. Supp. 2d 257 (D.N.J. 2011) ...................................................... 15

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278 (3d Cir. 2018) ....... 4

*Kent v. Hewlett–Packard Co.*, No. 09-5341, 2010 WL 2681767 (N.D. Cal. July 6, 2010) .................................. 11

*In re Lemington Home for the Aged*, 777 F.3d 620 (3d Cir. Jan. 26, 2015) ....................................................... 23

*Letson v. Ford Motor Co.*, No. 23-10420, 2024 WL 845844 (E.D. Mich. Feb. 28, 2024) ................................. 8, 9

*Luke v. Am. Home Prods. Corp., 1998 Pa. Dist. & Cnty. Dec.*, 1998 WL 1781624 (Pa. Ct. Com. Pl. Nov. 18, 1998) .................................................................................................................................................... 14

*Mack Trucks Inc. v. BorgWarner Turbo Sys., Inc.*, 508 F. App'x 180–85 (3d Cir. 2012) ....................................... 12

*Margolis v. Apple Inc.*, No. 23-CV-03882-PCP, 2025 WL 999867 (N.D. Cal. Apr. 3, 2025) ............................. 19

*McCabe v. Ford Motor Company*, 774 F. Supp. 3d 349 (D. Mass. 2025) ............................................................ 18

*McKee v. Gen. Motors LLC*, 376 F. Supp. 3d 751 (E.D. Mich 2019) ................................................................. 21

*Nelson v. Nissan N. Am., Inc.*, 2014 WL 7331075 (D.N.J. Dec. 19, 2014) ........................................................ 12

*Osness v. Lasko Prods., Inc.*, 868 F. Supp. 2d 402 (E.D. Pa. 2012) ................................................................. 10

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993) ..................................... 2

- iii -

*Phillips v. Cricket Lighters*, 584 Pa. 179 ........................................................................................ 23

*Post v. Liberty Mut. Grp., Inc., No. 2:14-CV-238-CDJ*, 2014 WL 2777396 (E.D. Pa. June 18, 2014) ................. 19

*Priebe v. Autobarn, Ltd.*, 240 F.3d 584 (7th Cir. 2001) ................................................. 11

*Pulte Home Corp. v. Parex, Inc.*, 265 Va. 518 (2003) ........................................... 14

*Riachi v. Prometheus Grp.*, 822 F. App'x 138 (3d Cir. 2020) ......................................... 16, 18

*Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096 (10th Cir. 2010) ........................................ 7

*Rivard v. Trip Mate, Inc.*, No. 22-1554, 2023 WL 2624721, (3d Cir. March 24, 2023)........................... 23

*Robinson v. Freightliner LLC*, No. 08-CV-761, 2009 WL 10718876 (M.D. Pa. Sept. 28, 2009) ............ 10, 11, 12

*Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177 (3d Cir. 2023) ........................................ 14

*S. USA Life Ins. Co., Inc, v. Foster*, 2019 WL 2110598 (W.D. Va. Apr. 29, 2019) ............................................ 20

*S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724 (10th Cir. 1997) .................................................. 7

*Salyers v. A.J. Blosenski, Inc.*, 731 F. Supp. 3d 670 (E.D. Pa. 2024) .............................................. 22

*In re Schering Plough Corp. Intron/ Temodar Consumer Class Action* F.3d 235–44 (3d Cir. 2012) .......................... 4

*Schmidt v. Ford Motor Co.*, 972 F.Supp.2d 712–721 (E.D. Pa. 2013) ............................................. 19

*Sheris v. Nissan N. Am. Inc., No. CIV. 07-2516* (WHW), 2008 WL 2354908 (D.N.J. June 3, 2008) .................. 11

*Sierra Club v. U.S. Army Corps of Eng'rs*, 277 F. App'x 170 (3d Cir. 2008) .......................................6, 7

*Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) ............12, 13

*Snider v. Hostess Brands, LLC, No. 7:20-CV-00516*, 2021 WL 311871 (W.D. Va. Jan. 15, 2021) .................18, 19

*Solak v. Ford Motor Co.*, 683 F. Supp. 3d 658 (E.D. Mich. 2023) ................................................... 8

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .......................................................... 4

*Sugasawara v. Ford Motor Co.*, No. 18-CV-06159-LHK, 2019 WL 3945105 (N.D. Cal. Aug. 21, 2019) ..........5, 9

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962 (C.D. Cal. 2014) ..................................... 11

*Tarsio v. FCA US LLC, No. 22-CV-9993* (NSR), 2024 WL 1514211 (S.D.N.Y. Apr. 8, 2024) ........................... 5

*Tijerina v. Volkswagen Grp. of Am., Inc., No. 221CV18755BRMLDW*, 2023 WL 6890996 (D.N.J. Oct. 19, 2023) 20

53009199

*U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294 (3d Cir. 2016) ................................. 15

*UHS of Delaware, Inc. v. United Health Services, Inc.*, 2015 WL 7294454 (M.D. Pa., 2015) ............................... 15

*Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372 ............................................................8, 9

*Webb v. Volvo Cars of N.A., LLC, No. CV 13-2394*, 2018 WL 1470470 (E.D. Pa. Mar. 26, 2018) ...................... 18

*Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476 (E.D. Pa. 2016) .............................................15, 23

*Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208 (10th Cir. 2012) ......................................5, 6

*Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, (2004) ............................................................ 18

*Zwiercan v. General Motors Corp.*, 2003 WL 1848571 (Pa.Com.Pl., 2003) ...................................... 20

53009199

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

This purported class action alleges a design defect in certain Rava model car seats due to an uncovered harness adjuster button that could potentially allow debris to accumulate and interfere with the harness adjuster mechanism that fastens the front harness straps.

Nuna has already initiated a recall that remedies the alleged defect.  *Id.* ¶¶ 11, 54.  The recall was authorized and is being overseen by the National Highway Transportation Safety Administration (NHTSA) and it provides a free Remedy Kit that cures the alleged defect by providing a new seat pad that covers the harness adjuster button, as well as a cleaning kit with instructions for removing any potential debris.

Plaintiff has not suffered a concrete injury and does not have standing to bring claims for monetary or injunctive relief because the recall remedy fully recompenses him for any loss.  The Remedy Kit fixes the alleged defect and provides Plaintiff with the non-defective car seat he bargained for.  There are also good grounds for this Court to decline to hear this case entirely, as it is an attempt to relitigate the details of a recall conducted under the sweeping authority of an expert federal agency.  Plaintiff wants this Court to second-guess the adequacy of the recall remedy approved by NHTSA and grant additional relief.  Additionally, Plaintiff's various warranty and fraud-based claims are poorly pleaded and fail to state a claim for relief.

## II.     FACTUAL ALLEGATIONS

On December 20, 2024, Nuna initiated a recall of its Rava model car seats manufactured between July 16, 2016 and October 25, 2023.  CAC ¶ 25.  The recall addresses an aspect of the Rava's design, namely the lack of a cover over the harness adjuster button.  *Id.* ¶ 4.  Nuna issued

- 1 -

a recall notice, dated January 15, 2025, which is referenced in the CAC.  *Id.* ¶ 28, 65; Recall Notice, Declaration of Matthew C. Wilson, ("Wilson Decl."), Ex. A.[1]

The recall is oversee by NHTSA, the nation's primary regulator of roadway safety.  *See id.* ("NHTSA Recall No. 24C002"); CAC ¶ 34, n.25 (incorporating https://www.nhtsa.gov/car-seat/NUNA/RAVA/a__4248717).  Nuna is subject to the requirements of the National Traffic Safety and Motor Vehicles Safety Act, which is administered by NHTSA.  *See Id.*  The Safety Act requires that Nuna and other vehicle equipment manufacturers notify consumers of a potential defect take action to remedy the issue *at no cost to consumers*.  *See* 49 U.S.C. §§ 30118(c), 30120 (2021).

NHTSA monitors and enforces the recall, which offers Rava owners a free Remedy Kit that includes a cleaning kit and seat pad that covers the harness adjuster button.  *See id.* ¶ 1 n.1 (incorporating https://nunababy.com/recalls-rava1) video at 6:37 (showing replacement seat pad with fabric cover).  Rava owners are instructed to perform a "harness function safety test" to determine if the harness is working properly. If the harness is working, the user only needs to replace the seat cover.  If the harness is not working, the user needs to perform the extra step of cleaning the harness adjuster using a Phillips head screwdriver (provided) to remove two small screws and a brush (also provided) to clean the harness adjuster mechanism.  A short video demonstrates how to perform the simple test and steps described above in less than eight minutes. *Id.*  If a consumer is uncomfortable performing these steps, the consumer may send the Rava to

---

[1] When deciding a motion to dismiss, district courts may consider documents incorporated by reference in the complaint, *California Pub. Employees' Ret. Sys. v. Chubb Corp.*,394 F.3d 126, 134 (3d Cir. 2004), as well as any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document, *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994).

Nuna and Nuna will complete these steps at no charge. *Id.* (incorporating https://nunababy.com/recalls-rava1) (with link to instructions for cleaning the harness adjuster).

Plaintiff claims he purchased three Rava seats, but he does not provide the dates of purchase. He says he completed the "online form for the recall" but has not yet received the Remedy Kit. *Id.* ¶ 74.[2] He admits he continues to use his Rava car seats. *Id.* ¶ 71.

On June 2, 2025, Plaintiff filed suit asserting claims for breach of implied warranty of merchantability, breach of express warranty, unjust enrichment, negligent misrepresentation and violations of the Magnuson-Moss Act (15 U.S.C. §§ 2301, *et seq.*) and the Pennsylvania Unfair Trade Practices and Consumer Protection Law (71 Pa. Cons. Stat. §§ 201-2 and 201-3, *et seq.*), on behalf of himself and a nationwide class, or in the alternative, a subclass of consumers who purchased recalled car seats in Virginia ("Virginia Subclass"). *Id.* ¶¶ 95, 104, 115, 127, 137, 149, 155. In addition, the CAC asserts violations of the Virginia Consumer Protection Act (Va. Code § 59.1-196, *et seq.*) on behalf of the Virginia Subclass. *Id.* ¶ 162.

No physical injuries or property damage are alleged; Plaintiff seeks compensatory damages for the lost benefit of the bargain caused by the latent harness adjuster cover defect, *id.* ¶¶ 112, 124, 134, 143, 152, 159, 165, as well as punitive damages and injunctive relief, *id.* at p. 32 ("Prayer for Relief").

The CAC should be dismissed because the harms have all been redressed by the recall. Each claim also fails independent of the others, for the specific reasons discussed below.

---

[2] The Complaint does not state whether Plaintiff completed the form requesting the Remedy Kit, which would have required he provide shipping information.

53009199

## III.    LEGAL STANDARD

Under Rule 12(b)(6), "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). And, "even at the pleading stage," the Court "need not accept as true unsupported conclusions and unwarranted inferences." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 286 (3d Cir. 2018) (quotations omitted). Rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This requires "'more than a sheer possibility that a defendant has acted unlawfully.'" *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243–44 (3d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

## IV.    ARGUMENT

### A.    Plaintiff Lacks Standing Because he has not Pleaded an Injury in Fact.

Article III standing is the "irreducible constitutional minimum" required to invoke the jurisdiction of the federal district courts. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). To have standing to sue, a plaintiff must allege some actual injury in fact; i.e., a harm that is both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (quotations omitted). Economic loss caused by the diminished value of a defective product is generally accepted as a compensable harm measured by the "difference in value between what was bargained for and what was received." *Id.*

53009199

at 1174. That harm is erased, however, when the plaintiff has access to a remedy that cures the defect and restores the product to its bargained-for value at the time of sale. *See, e.g.*, *Hadley v. Chrysler Grp., LLC*, 624 Fed. Appx. 374, 378 (6th Cir. 2015) (no standing to assert claims against auto manufacturer after repairs "removed the defect upon which the plaintiffs' diminished-value injury claim is based"); *Tarsio v. FCA US LLC*, No. 22-CV-9993 (NSR), 2024 WL 1514211, at *4 (S.D.N.Y. Apr. 8, 2024) ("[I]ssuance of a recall and repair deprives a party of an injury in fact based on any defect(s) remedied by the recall and repair."); *Sugasawara v. Ford Motor Co.*, No. 18-CV-06159-LHK, 2019 WL 3945105, at *6 (N.D. Cal. Aug. 21, 2019) (no concrete injury based on overpaying for defective product because the recall remedy "'removed the defect upon which the plaintiffs' diminished-value injury claim is based'"); *Comes v. Harbor Freight Tools USA, Inc.*, 2021 WL 6618816, at *5 (C.D. Cal. Sept. 29, 2021) (no injury in fact where the plaintiff claimed loss of money paid for a defective product and product recall offered full refund).

The CAC should be dismissed in its entirety for the same reasons: Plaintiff has not suffered a cognizable harm. The purported injury is the lost benefit of the bargain caused by the uncovered harness adjustor. *Id.* ¶ 77. The Remedy Kit corrects this issue by providing a cover for the harness adjuster area. *Id.* ¶ 1 n.1 (incorporating https://nunababy.com/recalls-rava1) (describing the Remedy Kit and providing a link to instructions for cleaning the harness adjuster). Thus, by participating in the recall Plaintiff will be made whole; he will own Rava car seats equipped with a fabric cover that prevents debris from accumulating in the harness adjuster mechanism.

Plaintiff cannot attain standing simply by stating that the Remedy Kit is ineffective. *See Hadley*, 624 Fed. Appx. at 380 (bare assertion that promised repairs may not be effective in restoring the plaintiffs' benefit of the bargain were too speculative to establish injury); *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1211-12 (10th Cir. 2012) (finding plaintiff had to

53009199

show some "cognizable danger" that a NHTSA recall would fail to provide a complete remedy in order to withstand motion to dismiss). The CAC asserts that "[t]he purported remedy . . . does not actually address the Defect or make the Rava Car Seat safe" without factual support. *Id.* ¶ 75. Indeed, Plaintiff admits that he has not received the Remedy Kit. *Id.* ¶ 76. Nor does he reference any report by other consumers that the Remedy Kit is ineffective. He therefore has no basis to opine on its effectiveness. The bare assertion that the Remedy Kit will be ineffective at fixing the issue is purely speculative and is not sufficient to establish a cognizable injury. For these reasons, Plaintiff lacks standing to bring his claims.

### B.    The Claims Should be Mooted by the NHTSA-Backed Recall

Nuna is currently conducting a recall of Rava car seats under NHTSA's oversight to address the precise design issue underlying Plaintiff's claims. Plaintiff alleges that he expects to receive a Remedy Kit that includes a seat cover to prevent debris from interfering with the harness adjuster mechanism. CAC ¶ 74. The Remedy Kit was approved by NHTSA and ensures that recalled car seats will function as well as any consumer would have reasonably expected at the time of purchase. Despite the recall, and despite the fact that Plaintiff continues to use the product even though he has not yet retrofitted his product with the Remedy Kit, he claims he is entitled to money back 'the lost benefit of the bargain' in addition to equitable and injunctive relief. The doctrine of prudential mootness applies to end cases like this as a matter of comity, respect for coordinate branches of government, and avoidance of needless burdens on our court system.

"[P]rudential mootness is discretionary." *Brown v. Buhman*, 822 F.3d 1151, 1165 n.15 (10th Cir. 2016); accord *Sierra Club v. U.S. Army Corps of Eng'rs*, 277 F. App'x 170, 172 (3d Cir. 2008); 13B C. Wright & A. Miller, Fed. Prac. & Proc. Juris. § 3533.1 (3d ed. 2024). The prudential mootness doctrine allows a court to "decline to exercise [its] discretion to grant declaratory and

injunctive relief if the controversy is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Sierra Club*, 277 F. App'x at 172 (cleaned up). Prudential mootness therefore "addresses 'not the power to grant relief[,] but the court's discretion in the exercise of that power.'" *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) (quoting *Chamber of Commerce v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980)).

"In cases where, as here, a manufacturer announces a recall program to remedy the defect central to a pending case and plaintiffs choose to pursue their claims despite the recall, courts have examined the justiciability of plaintiffs' claims under the doctrine of prudential mootness." *Bolton v. Ford Motor Co.*, 2024 WL 3328522, at *4 (D. Del. July 8, 2024) (citing *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208 (10th Cir. 2012) (Gorsuch, J.). Involvement of a federal regulatory authority weighs heavily in the analysis. Committing to a recall with NHTSA "set[s] into motion the great grinding gears of a statutorily mandated and administratively overseen national recall process" whereby companies assume a statutory duty to "remedy the defect without charge" and subject themselves "to the continuing oversight of (and potential penalties imposed by) NHTSA." *Winzler*, 681 F.3d at 1211 (citing 49 U.S.C. § 30120). Therefore, "once the plaintiff has a remedial promise from a coordinate branch in hand, [federal courts] will generally decline to add the promise of a judicial remedy to the heap." *Id.* at 1210.

While some district courts have limited the doctrine to equitable, as opposed to legal claims, *see, e.g.*, *Cohen v. Subaru of Am., Inc.*, No. 1:20-cv-08442-JHR-AMD, 2022 WL 721307, at *97 (D.N.J. Mar. 10, 2022), this distinction should not control the analysis. Equitable actions "must be sustainable under the same mootness criteria that apply to any other lawsuit." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010). Indeed, District

53009199

courts across the country have dismissed both equitable and legal claims as prudentially moot when a recall provides a complete remedy for the relief sought. *See, e.g.*, *Hadley v. Chrysler Grp., LLC.*, 624 F. App'x 374 (6th Cir. 2015) (finding claims for equitable relief mooted by NHTSA recall promising to repair defective airbag system and dismissing claim for monetary damages for lack of standing); *Letson v. Ford Motor Co.*, No. 23-10420, 2024 WL 845844, at *3 (E.D. Mich. Feb. 28, 2024) (dismissing class action seeking equitable relief and monetary damages caused by defective fuel injectors that were replaced during NHTSA recall); *Solak v. Ford Motor Co.*, 683 F. Supp. 3d 658, 664 (E.D. Mich. 2023) (dismissing class action seeking equitable relief and monetary damages for defective airbag system where a voluntary recall promised to repairs or reimbursement to cure the defect); *Ward-Richardson v. FCA US LLC,* 690 F. Supp. 3d 1372, 1379–80 (N.D. Ga. 2023) (dismissing fraud and consumer protection claims brought under Virginia law where NHTSA recall remedied the defect); *Cheng v. BMW of N. Am., LLC,* No. CV 12-09262 GAF SHX, 2013 WL 3940815, at *2, *4 (C.D. Cal. July 26, 2013) (dismissing claims for injunctive relief due to vehicle rollaways where a parallel NHTSA recall "resolves the rollaway problem" and NHTSA retains full power "to ensure BMW's full compliance through fines" and other means of enforcement); *cf. Cohen*, 2022 WL 721307 at *97–98 ("Subaru has not offered any authority showing that a court may exercise its discretion to find legal claims prudentially moot."). District courts will exercise discretion to dismiss claims when the remedy sought has already been provided subject to the authority of a federal agency overseeing a recall, regardless of the distinction between equity and law.

Nuna has committed to a recall under NHTSA's guidance and continuing oversight to remedy the alleged defect that forms the basis of this lawsuit. The CAC defines the "Defect" as the absence of a cover over the front harness adjuster button, the lack of which may allow debris

to accumulate and interfere with the mechanism that fastens the front harness straps.  CAC ¶ 4.
The relief provided by the recall (a cleaning kit and seat pad that covers the harness adjuster button)
fully addresses the "Defect" by providing tools and instructions for cleaning debris from the
harness adjuster mechanism and installing a cover that will prevent debris from falling into the
adjuster.  If consumers are uncomfortable completing these steps, Nuna will complete them for the
consumer at no cost.  *Id.* ¶ 1 n.1 (incorporating https://nunababy.com/recalls-rava1) (instructions
for cleaning the harness adjuster).

That Plaintiff seeks both equitable and monetary relief does not alter the analysis.  This
lawsuit is an attempt at second-guessing the NHTSA and the corrective action already endorsed
by a federal regulatory agency.  Furthermore, legal precedent holds that any additional relief that
has not already been approved by the NHTSA would exceed the monetary loss in value caused by
the alleged defect.  *See Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 378 (6th Cir. 2015)
(recall related to defective airbag system mooted claims for declaratory and injunctive relief, and
also "removed the defect upon which the plaintiffs' diminished-value injury claim [was] based").
Courts have discretion to dismiss legal claims as prudentially moot where a recall remedy removes
the defect and restores the product to the condition bargained for at the time of sale.  *See Letson*,
2024 WL 845844, at *3 ("Ford's recall measures would remediate the very same 'defect upon
which' the 'diminished-value injury claim[s] [are] based,' thereby restoring their vehicle's values
and eliminating plaintiffs' overpayment injuries.") (quoting *Hadley,* 624 F. App'x 374, 378);
*Ward-Richardson,* 690 F. Supp. 3d at 1379–80 (prudential mootness doctrine applied even though
plaintiffs sought monetary relief for the diminished-value damages because the recall "promises
to remove the very defect that forms the basis of Plaintiffs' diminished-value claim"); *Sugasawara
v. Ford Motor Co.,* No. 18-CV-06159-LHK, 2019 WL 3945105, at * 6 (N.D. Cal. Aug. 21, 2019)

("Plaintiffs have failed to adequately allege that the Defect remains after the recall remedy has been completed. If the post-recall remedy Vehicles perform as they would without the Defect, then it follows that the Vehicles' pre-defect values have likewise been restored.").

The same logic applies here. Respect for a coordinate branch of government already addressing Plaintiff's grievances as well as principles of judicial prudence and efficiency warrant dismissal.

### C. Plaintiff's Breach of Warranty Claims Fail. (Counts II-IV)

### 1. The Implied Warranty of Merchantability Claim Fails. (Count II)

The implied warranty of merchantability claim is untenable because Plaintiff continues to use his recalled car seats. *See Robinson v. Freightliner LLC*, No. 08-CV-761, 2009 WL 10718876, at *9, *9 n.19 (M.D. Pa. Sept. 28, 2009) (finding that motor home remained merchantable despite the existence of defects that "were undoubtedly inconveniences . . . and more than a little unsettling . . . because they did not substantially impair the ability of the Plaintiffs to use the vehicle for habitation or transportation."); *Osness v. Lasko Prods., Inc.*, 868 F. Supp. 2d 402, 414 (E.D. Pa. 2012) (no breach of implied warranty of merchantability based on recalled fan where plaintiff did not allege that "she has otherwise been unable to use her fan"); *see also Hughes v. Panasonic Consumer Elecs. Co.*, No. CIV.A. 10-846 SDW, 2011 WL 2976839, at *23 (D.N.J. July 21, 2011) (accepting as true allegations that televisions are defective but dismissing implied warranty of merchantability claim because the complaint "does not contain any explicit allegation that plaintiffs can no longer use their Televisions"); *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 282–83 (D.N.J. 2011) (no breach of implied warranty of merchantability for defective brewing machine because plaintiff did not allege "that his machine would not brew coffee or that it was inoperable").

Other jurisdictions hold the same. *See, e.g.*, *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 762 (E.D. Mich. 2017)]("[T]here is no indication in the complaint that, despite the safety concerns, he has actually stopped driving his vehicle. The lack of such an allegation warrants dismissal of his implied warranty claims."); *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014) (dismissing implied warranty claim because "Plaintiffs have not alleged that they stopped using their vehicles"); *Kent v. Hewlett–Packard Co.*, No. 09-5341, 2010 WL 2681767, at *4 (N.D. Cal. July 6, 2010) (dismissing implied warranty claim because "[p]laintiffs do not allege that they have been forced to abandon the use of their computers"); *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 588 (7th Cir. 2001) (affirming dismissal of an Illinois implied warranty claim when Plaintiff alleged the subject vehicle was "dangerous to drive" but he continued to drive the car); *see also Sheris v. Nissan N. Am. Inc.*, No. CIV. 07-2516 (WHW), 2008 WL 2354908, at *6 (D.N.J. June 3, 2008) ("'The weight of authority, from courts across the country, indicates that plaintiffs may not recover for breach of the implied warranty of merchantability under the facts' where plaintiffs have driven their cars without problems for years.").

Plaintiff cannot maintain a claim for breach of the implied warranty of merchantability when he continues to use his Rava car seats for their intended purpose. *See Robinson*, No. 08-CV-761, 2009 WL 10718876, at *9 ("Plaintiffs' continued use of the vehicle at the time of the alleged defects were present indicates to us that the living area was not unusable and that the vehicle itself was capable of safely transporting people from one place to another."). "To be merchantable, goods need not be of the *best* quality, they need only be of reasonable quality within expected variations and fit for the ordinary purposes for which they are used." *Robinson v. Freightliner LLC*, No. 08-CV-761, 2009 WL 10718876, at *9 (M.D. Pa. Sept. 28, 2009) (citations and

quotations omitted) (emphasis in original).  Yet Plaintiff continues to use his Rava car "on a daily basis."  *Id.* ¶ 71.  He claims that with only a little "extra time and attention" he can "ensure that the straps on his three Rava Car seats are not dangerously loose."  *Id.*  If Plaintiff's car seats were truly unmerchantable one should assume he would not be using them, as they would no longer be capable of safely transporting children.  Count II of the CAC should therefore be dismissed.

## 2.    The Express Warranty Claim Fails.  (Count III).

The express warranty claim fails because the pleadings do not identify any guarantee related to the alleged design defect.  Instead, the CAC recites from Nuna's Limited Warranty language promising to repair or replace units with "defect[s] in materials and workmanship."  CAC ¶ 129.  No other writing or assurances that could form the basis for an express warranty claim are identified in Count III.  *See id.* ¶ 130 (referring to "contracts" and "express warranties" without identifying their timing or substance).

Express warranties against defects in "materials and workmanship" are not construed to cover design defects.  *See Coba v. Ford Motor Co.*, 932 F.3d 114, 121 (3d Cir. 2019) ("The plain and ordinary meaning of the term 'defects in materials or workmanship' unambiguously excludes 'design' defects.") (cleaned up); *Mack Trucks Inc. v. BorgWarner Turbo Sys., Inc.*, 508 F. App'x 180, 184–85 (3d Cir. 2012) ("Mack does not offer any Pennsylvania case law or evidence of the parties' intent to support the proposition that a material and workmanship warranty includes a warranty for the product's design."); *Flores v. FCA US LLC*, No. 20-10972, 2021 WL 1122216, at *9 (E.D. Mich. Mar. 24, 2021) (dismissing breach of express warranty claim under Virginia law because warranty covering defects in materials and workmanship did not cover alleged design defect); *Nelson v. Nissan N. Am., Inc.*, 2014 WL 7331075 (D.N.J. Dec. 19, 2014) (applying Pennsylvania law) ("[A]bsent specific language to the contrary, design defects cannot be

- 12 -

encompassed within the meaning of defects in workmanship or materials."); *accord Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2017 WL 3283998, at *8 (N.D. Cal. Aug. 1, 2017) ("the overwhelming weight of state law authority holds that design defects are *not* covered under similar warranties [for defects in materials and workmanship].").  Nuna's Limited Warranty does not contain any assurance, guarantee, or reference to design defects (though the recall provides a remedy).  In order to state a claim for breach of the Limited Warranty, Plaintiff would have to allege harm caused by a manufacturing defect.

Instead, the CAC unambiguously defines the underlying defect as a design flaw.  *See, e.g.*, CAC ¶ 4 ("Defendant designed over 600,000 RAVA Car Seats manufactured between July 16, 2016 and October 25, 2023 without a cover over the front harness adjuster button, which controls the tightness of the Car Seat straps (the "Defect")"); ¶ 29 (" the RAVAs do not meet the bare minimum standards of operating with the usual and expected level of safety due to the Defect in the RAVA's design"); ¶ 80 ("the Rava is defectively designed[.]").  Likewise, Plaintiff does not allege that his Ravas differ from other units manufactured during the recall period; rather, the CAC alleges that every Rava manufactured in this period has the same defect.  *See id.* ¶ 9 ("Unfortunately, all consumers who purchased a RAVA Car Seat received a defective and unsafe car seat.").

Count III purports to make out a claim based on the specific assurances contained within Nuna's Limited Warranty, but then goes on to assert a breach of unspecified "contracts" and "express warranties" without referencing any specific writing or language other than the Limited Warranty's promise to repair or replace units affected by a manufacturing defect..  *See id.* ¶ 130.  To the extent the CAC might be read to assert the existence of express warranties other than the provisions of the Limited Warranty, Plaintiff has not stated a claim.

- 13 -

"In order to survive a motion to dismiss, a complaint asserting a claim for breach of an express warranty must 'provide more than "bald assertions" and should identify specific affirmations by the defendant that would constitute the alleged express warranty.'" *Fleischer v. Fiber Composites, LLC*, No. 12-1326, 2012 WL 5381381, at *4 (E.D. Pa. Nov. 2, 2012) (quoting *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 722 (D.N.J. 2011)); *Luke v. Am. Home Prods. Corp.*, 1998 Pa. Dist. & Cnty. Dec., 1998 WL 1781624, at *6 (Pa. Ct. Com. Pl. Nov. 18, 1998) (dismissing an express warranty claim because the complaint failed to state "what the warranty allegedly covered, when it was made[,] and to whom it was directed"); *Pulte Home Corp. v. Parex, Inc.*, 265 Va. 518, 523 (2003) (affirming dismissal express warranty claim where the pleadings did not identify any "affirmations of fact, promises, descriptions, and/or use of samples and/or models purportedly made by [the defendant].").   Accordingly, vague and conclusory references to "contracts" and "express warranties" within Count III of the CAC cannot form the basis of an express warranty claim.  Count III of the complaint should be dismissed.

## 1.     The Magnuson-Moss Warranty Act ("MMWA") Claim Fails. (Count IV)

Claims under the Magnuson-Moss Warranty Act ("MMWA") are not cognizable in federal court where "the action is brought as a class action, and the number of named plaintiffs is less than one hundred."  15 U.S.C. § 2310(d)(3).  The 100-plaintiff rule is intended to restrict access to federal court for MMWA claims, therefore it is strictly construed and bars claims even where the less stringent requirements of the Class Action Fairness Act are met.  *Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 182-83 (3d Cir. 2023) (also noting that CAFA requires just one named plaintiff).  In short, there is no exception to the rule—"MMWA claims can *only* be brought in federal court if the § 2310(d)(3) requirements are satisfied."  *Id.* at 182.  Because the CAC names

just one Plaintiff, the MMWA claim fails as a matter of law.

In addition, MMWA claims should be dismissed when there is no actionable breach of warranty under state law.  "A claim under the MMWA relies on the underlying state law claim." *Johansson v. Cent. Garden & Pet. Co.*, 804 F. Supp. 2d 257, 265 (D.N.J. 2011).  For the reasons discussed above (Sections C.1–2), Plaintiffs cannot state a claim for breach of warranty to establish a violation of the MMWA.  *Id.*; *see also Amato v. Subaru of Am., Inc.*, No. 18-16118, 2019 WL 6607148, at *41 (D.N.J. Dec. 5, 2019) (applying *Johansson*).

### D.     Plaintiff Fails to Plead Fraud-Based Negligent Misrepresentation and State Consumer Protection Claims.  (Counts I, V and VI)

Plaintiff's fraud-based claims fail because they are not pled with the particularity required by Federal Rule of Civil Procedure 9(b).  Claims sounding in fraud "must state with particularity the circumstances constituting fraud[.]"  Fed. R. Civ. P. 9(b).  Because Plaintiff's claims for negligent misrepresentation and violations of state consumer protection laws each sound in fraud, they are subject to Rule 9(b).  *See Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 484 (E.D. Pa. 2016) (fraudulent misrepresentation, UTPCPL, and negligent misrepresentation claims all subject to Rule 9(b)); *Fravel v. Ford Motor Co.*, 973 F. Supp. 2d 651, 656 (W.D. Va. 2013) ("Rule 9(b)'s particularity requirements apply to the VCPA").

Allegations of fraud must be supported by factual details identifying "the who, what, when, where and how of the events at issue."  *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016).  Conversely, facts pleaded on "information and belief" lack the particularity required to satisfy Rule 9(b).  *See, e.g.*, *UHS of Delaware, Inc. v. United Health Services, Inc.*, 2015 WL 7294454, at *7 (M.D. Pa., 2015) (collecting cases) ("Courts within this circuit consistently hold that pleadings based on 'information and belief' are insufficient to satisfy the Rule 9(b) particularity requirement.").  Nor will claims rest on vague assertions that

53009199

merely lump[] the who, what, when, and where together." *Riachi v. Prometheus Grp.*, 822 F. App'x 138, 142 (3d Cir. 2020) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'")).

The CAC falls short of this standard. The pleadings do not identify any actionable misrepresentation or reliance; they do not establish a duty to disclose the information Nuna is alleged to have fraudulently withheld; and they fails to state a claim for negligent misrepresentation under the laws of Pennsylvania and Virginia.

### 1. Plaintiff Does Not Allege An Actionable Misrepresentation.

To satisfy Rule 9(b), a plaintiff "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation, and must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Hlista v. Safeguard Props., LLC*, 649 F. App'x 217, 221 (3d Cir. 2016) (cleaned up). Instead Plaintiff relies non-actionable puffery, "Features & Specs" that are unrelated to the alleged defect, and vague assertions that do not establish the elements of fraud.

"Puffery is defined as 'exaggeration or overstatement expressed in broad, vague, and commendatory language.'" *Fusco v. Uber Technologies, Inc.*, No. 17-00036, 2018 WL 3618232, at *7 (E.D. Pa., 2018) (quoting *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 2018)). It often includes generalized terms of superiority concerning a product's quality, reliability, or safety that merely reflect the seller's opinion, as opposed to any verifiable fact. *See, e.g., Fusco v. Uber Technologies, Inc.*, 2018 WL 3618232, at *7 (E.D. Pa., 2018) (citing sales terms like "thorough," "rigorous," "robust," "safe," "reliable," and "you can trust"); *Allen*, 2017 WL 1957068, at *3 (dismissing VA consumer protection claims because alleged statements like "PICK

- 16 -

53009199

[the Avenger] FOR ITS SAFETY" and "you're surrounded by advanced features designed to keep you safe and secure" are "mere puffery").

Whether a statement is puffery is a legal question that may be determined from the allegations in the complaint. *Fusco*, 2018 WL 3618232, at \*15. The statements that form the basis for fraud claims in this case are puffery because they consist of vague assertions of quality that cannot be measured or tested, whereas "[f]raud requires a statement that can be proved false." *Fusco*, 2018 WL 3618232, at \*7 (citing *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 393 (8th Cir. 2004).

Plaintiff relies on two marketing statements currently found on Nuna's website: (1) stating that the Rava is a "reliable anchor to your child's car-riding adventures and your parental peace of mind"; and (2) that customers can "trust in its unwavering security." CAC. ¶ 20. Plaintiff also references statements on Nuna's website that its car seats generally (not just the Rava) "are engineered for growth keeping baby to 'tween safe at every age.'" *Id.* ¶ 23. These claims are too broad and vague to be susceptible to objective testing or measurement and therefore represent the type of non-actionable sale puffery routinely rejected by district courts. *See, e.g.*, *Allen v. FCA US LLC*, 2017 U.S. Dist. LEXIS 71603, at \*6 (W.D. Va. 2017).

Plaintiff further alleges the "Features & Specs" page of Nuna's website contains additional statements warranting the Rava's safety. *See id.* ¶ 21 ("Nuna . . . list[s] six safety features, including several promising that consumers' children will be securely fastened into the Rava."). These representations are unrelated to the alleged harness adjuster defect that forms the basis of the claims. *See id.* n. 13 (incorporating "Features & Specs webpage). Moreover, the CAC does not allege facts that explain how these statements are false or misleading. The statements cited in Nuna's "Features & Specs" webpage do not support any of the fraud-based claims. *See Fusco*,

2018 WL 3618232, at *7 (statements cannot constitute actionable misrepresentations where Plaintiff does not allege statements to be false).

The sole remaining misrepresentation alleged in the CAC, made "upon information and belief," is that "sometime around 2020, Nuna represented that the RAVA Car Seat would expand to grow with consumers' children, and last 10 years." CAC ¶ 19. Plaintiff does not identify where this statement was made, when it was made, who made it, or what exactly it said—the particularity required under Rule 9(b). Allegations this empty cannot establish fraud. *See, e.g.*, *Riachi v. Prometheus Grp.*, 822 F. App'x 138, 142 (3d Cir. 2020) ("Rule 9(b) is not satisfied where a plaintiff . . . merely lumps the who, what, when, and where together"); *Coyle v. JSL Mechanical, Inc.*, 2023 WL 5985273, at *3-4 (E.D. Pa. 2023) (dismissing UTPCPL claim where plaintiff did not allege representations with particularity as required under Rule 9(b)); *Snider v. Hostess Brands, LLC*, No. 7:20-CV-00516, 2021 WL 311871, at *2–3 (W.D. Va. Jan. 15, 2021) (dismissing VCPA claim where plaintiff failed to allege the "who, what, when, where, and how of the alleged fraud").

### 2.    The CAC Does Not Plausibly Allege Reliance.

To state a claim for misrepresentation-based violations of the UTPCPL and VCPA, a plaintiff must plead reliance. *See Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 501, (2004) ("To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance."); *Webb v. Volvo Cars of N.A., LLC*, No. CV 13-2394, 2018 WL 1470470, at *5 (E.D. Pa. Mar. 26, 2018) (same for negligent misrepresentation); *Fravel v. Ford Motor Co.*, 973 F. Supp. 2d 651, 658 (W.D. Va. 2013) ("Virginia courts have consistently held that reliance is required to establish a VCPA claim."). Reliance requires proof Plaintiff saw and relied on specific misrepresentations prior to purchasing his Ravas. *See McCabe v. Ford Motor*

*Company*, 774 F. Supp. 3d 349, 403 (D. Mass. 2025) (dismissing affirmative misrepresentation-based UTPCPL claim where Pennsylvania plaintiffs failed to allege actual reliance on any alleged misrepresentations); *Margolis v. Apple Inc.*, No. 23-CV-03882-PCP, 2025 WL 999867, at *6 (N.D. Cal. Apr. 3, 2025) (dismissing VCPA claim because plaintiff failed to plead reliance).

But Plaintiff does not allege that he actually saw or relied upon any specific misrepresentation prior to purchasing his Ravas.  The CAC alleges he purchased his Ravas after "looking at labels, packaging, advertisements, and online reviews," but does not identify the statements he allegedly reviewed, or when he reviewed them.  CAC ¶ 66.  The alleged representation as to the ten-year use life of Rava car seats is similarly lacking factual support.  A bare assertion of reliance warrants dismissal.  *See Schmidt v. Ford Motor Co.*, 972 F.Supp.2d 712, 720–721 (E.D. Pa. 2013) (dismissing UTPCPL and negligent misrepresentation claims where plaintiffs failed to allege "facts indicating the date, time, and place of the alleged fraud," as required to support their allegation of reliance).  Therefore, fraud-based claims fail.  *See Post v. Liberty Mut. Grp., Inc.*, No. 2:14-CV-238-CDJ, 2014 WL 2777396, at *3 (E.D. Pa. June 18, 2014) (dismissing UTPCPL claim where plaintiff failed to alleged actual reliance on the allegedly false advertising at the time of purchase); *Snider v. Hostess Brands, LLC*, 2021 WL 311871, at *4 (W.D. Va. Jan. 15, 2021) (dismissing VCPA claim where allegations of reliance were not pled with particularity).

### 3.    Plaintiff's Omission-Based Claims Fail.

Plaintiff's omission-based fraud and negligent misrepresentation claims also fail under Pennsylvania and Virginia law.  When allegations of a UTPCPL, VCPA, or negligent misrepresentation claim rely on an omission, the claim is actionable only if there is a duty to disclose.  *See DeSimone v. U.S. Claims Servs., Inc.*, No. CV 19-6150, 2020 WL 1164794, at *3

(E.D. Pa. Mar. 11, 2020); *S. USA Life Ins. Co., Inc, v. Foster*, 2019 WL 2110598, at * 5 (W.D. Va. Apr. 29, 2019); *Tijerina v. Volkswagen Grp. of Am., Inc.*, No. 221CV18755BRMLDW, 2023 WL 6890996, at *36 (D.N.J. Oct. 19, 2023) (to plead an omission-based negligent misrepresentation claim under Pennsylvania law, a plaintiff must show that defendant had a duty to disclose).

Under Virginia law, a defendant does not have duty to disclose unless it has pre-sale knowledge of a defect.  *See Hammerschmidt*, 583 F. Supp. 3d at 1222 ("A showing of presale knowledge of an alleged defect is required to state a claim for fraudulent omission"; dismissing claims under VA law); *Allen*, 2017 WL 1957068, at *3 ("Without allegations that Defendant knew of the safety issues prior to its advertisements or the consumer transaction in which Plaintiff purchased her vehicle, there cannot be a claim for fraud under the VCPA.").

Under Pennsylvania law, a defendant has a duty to disclose known serious and life-threatening latent defects.  *Zwiercan v. General Motors Corp.*, 2003 WL 1848571, at *6 (Pa.Com.Pl., 2003).

Plaintiff alleges five reasons Nuna supposedly knew about the alleged defect prior to the recall: (1) consumer complaints regarding the defect since 2020, CAC ¶ 40; (2) Nuna's October 2023 refresh of the Rava, *id*.; (3) Nuna's responses to consumer complaints, including a response in 2021 that "sometimes crumbs or sand can get inside the seat;" *id*.; (4) prior recalls affecting other companies, *id.* ¶ 46; and, (5) prior NHTSA warnings regarding "buckle performance issues," *id.* ¶ 47.  None of these allegations establish that Nuna knew of the alleged defect before Plaintiffs purchased their Ravas.

First, as to customer complaints, Plaintiff alleges Nuna manufactured over 600,000 Ravas and identifies a handful of complaints regarding the Rava's straps loosening.  The CAC does not state when he purchased his Ravas, so it is impossible to know based on the pleadings how many

53009199

of those complaints were submitted prior to his purchases.  In any event, the alleged customer complaints were posted publicly on NHTSA's website.  *Flores*, 2021 WL 1122216, at \*18–23 (E.D. Mich., 2021) (dismissing VA omission-based fraud claims, in part, because consumer complaints on a third-party website were insufficient to show defendant's pre-sale knowledge); *see also Ivanoff v. Walmart*, 2025 U.S. Dist. LEXIS 149634 at \*90 (S.D. OH 2025) (consumer complaints—even made directly to a defendant—are not enough by themselves to allege pre-sale knowledge of a defect); *McKee v. Gen. Motors LLC*, 376 F. Supp. 3d 751, 761 (E.D. Mich 2019) ("[P]laintiff's allegations of consumer complaints online or to [a third party] are insufficient to support a finding of [defendant's] knowledge.").

Second, Nuna's October 2023 refresh does not support an inference of Nuna's presale knowledge because Plaintiff does not allege the dates he purchased his three Ravas.  Two of his Ravas were manufactured in December 2022, and one was manufactured in June 2023.  Without alleging the timing of his purchases, Plaintiff cannot plausibly connect the October 2023 refresh to his claim that Nuna had presale knowledge of the alleged defect.  A refresh introduced at some point after the sale cannot, by itself, establish Nuna's knowledge of a defect before the sale.

Third, Plaintiff alleges that Nuna responded to "many" consumer complaints but identifies only one statement from 2021, where Nuna indicated that "sometimes crumbs or sand get inside of the seat."  CAC ¶ 40.  This allegation cannot establish pre-sale knowledge of a defect in the Rava.

Finally, prior recalls of different products by different companies related to different defects have nothing to do with the Rava.  Similarly, the alleged "NHTSA warning" regarding "buckle performance issues" was not sent to Nuna, but to another car seat manufacturer (Graco) about a different product.  These allegations regarding other companies' products in no way

suggest that Nuna knew or had any reason to believe that there were issues with the Rava harness adjuster mechanism.

    **4.**    **Plaintiff Does Not Allege a Misrepresentation of a Material Fact. (Count VI)**

Plaintiff's claim for negligent misrepresentation fails because he does not plausibly allege a misrepresentation of material fact.  *See Salyers v. A.J. Blosenski, Inc.*, 731 F. Supp. 3d 670, 684 (E.D. Pa. 2024) (misrepresentation of material fact required under Pennsylvania law); *Baker v. Elam*, 883 F. Supp. 2d 576, 580 (E.D. Va. 2012) (same under Virginia law).[3]  Plaintiff does not allege any actionable misrepresentation, (as argued in Section D.1), and thus fails to state a claim for negligent misrepresentation.  *See, e.g.*, *Doe A.F. v. Lyft, Inc.*, No. CV 23-3990-KSM, 2024 WL 3497886, at *9–10 (E.D. Pa. July 19, 2024) (dismissing claim for negligent misrepresentation because "most of the statements Plaintiff challenges are unactionable puffery and she has not alleged facts indicating that the actionable statements are false").

    **E.**    **Plaintiff Fails to State a Claim for Unjust Enrichment.  (Count V)**

Neither Virginia nor Pennsylvania law permit unjust enrichment claims where a dispute involves terms of a valid contract.  *See In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal., Mar. 12, 2014) (dismissing VA plaintiffs' unjust enrichment claims based on the same allegations motivating consumer protection and warranty claims); *Rivard v.*

---

[3] Virginia courts do not recognize a cause of action for negligent misrepresentation.  *Baker*, 883 F. Supp. 2d at 581.  However, some courts applying Virginia law construe a claim for negligent misrepresentation as one for constructive fraud.  *Barrigan v. Elite Funding*, No. CIV. A. 07-0951, 2009 WL 54514, at *4 (E.D. Va. Jan. 6, 2009), aff'd, 353 F. App'x 813 (4th Cir. 2009).  Like a claim for negligent misrepresentation under Pennsylvania law, a claim for constructive fraud under Virginia law requires a false representation of fact.  *Baker*, 883 F. Supp. 2d at 580.

53009199

*Trip Mate, Inc.*, No. 22-1554, 2023 WL 2624721, at *3-4 (3d Cir. March 24, 2023) (citing *Restatement (Third) of Restitution and Unjust Enrichment*, § 2 (2011)) ("Claims that lie in equitable principles of quasi-contract, like unjust enrichment, cannot override an enforceable contract between the parties.").  Alternatively, an unjust enrichment theory based on unlawful or improper conduct must be pled "as a companion" to an underlying tort theory.  *See Zafrana v. Pfizer, Inc.*, 724 F. Supp. 2d 545, 561 (E.D. Pa. 2010) (dismissing unjust enrichment claim where the plaintiff did not plead a separate tort, the damages from which could have supported a theory of unjust enrichment.).  Accordingly, Plaintiff's unjust enrichment claim should be dismissed because it is predicated on the same alleged conduct underpinning express warranty and fraud-based claims, which either depend on the existence of a valid contract or else fail to state a claim.  *See Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 493 (E.D. Pa. 2016) ("Where the unjust enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying claim.").

### F.    Plaintiff Fails to Plead a Basis for Punitive Damages.

Under Pennsylvania law, punitive damages are an "extreme remedy available only in the most exceptional matters," awarded for conduct that is outrageous because of the defendant's evil motive or reckless indifference to the rights of others.  *Phillips v. Cricket Lighters*, 584 Pa. 179, 188 (Pa., 2005) (quoting *Martin v. Johns-Manville Corp.*, 508 Pa. 154, 171–172 (Pa., 1985), *rev'd on other grounds*.  The state of mind of the actor is vital: the act, or the failure to act, must be intentional, reckless or malicious.  *See In re Lemington Home for the Aged*, 777 F.3d 620, 633 (3d Cir. Jan. 26, 2015).  Virginia law likewise imposes a "heavy burden on a plaintiff seeking punitive damages," requiring factual allegations "indicative of willfulness or maliciousness."  *Bui v. Koons of Tysons Corner Inc.*, No. 22-cv-387 (RDA/IDD), 2023 WL 4671212, at *4 (E.D. Va. July 20,

- 23 -

2023) ("[T]he standard for establishing punitive damages is beyond even gross negligence because the primary purpose of punitive damages is to punish wrongdoers acting willfully, wantonly, maliciously, or with disregard for the law.") (quotations omitted).

No facts are alleged that come close to suggesting that Nuna's conduct was malicious, oppressive, or outrageous.  At most, Plaintiff alleges that Nuna is working with NHTSA to voluntarily recall Ravas for corrective action to remediate any potential concerns. This does not amount to malicious, oppressive, or outrageous conduct. Accordingly, Plaintiff's prayer for punitive damages should be stricken and dismissed.

## V.    CONCLUSION

The deficiencies in Plaintiff's Complaint are matters of law and not curable.  Nuna thus asks the Court to dismiss the Complaint in its entirety with prejudice.

Respectfully Submitted,

Dated: August 29, 2025                    BY:  */s/ Matthew C. Wilson*
                                          **GOLDBERG SEGALLA LLP**
                                          Matthew C. Wilson
                                          1700 Market Street, Suite 3232
                                          Philadelphia, PA 19103
                                          (267) 519-6800
                                          mwilson@goldbergsegalla.com

                                          **CROWELL & MORING LLP**
                                          Scott L. Winkleman (*pro hac vice* pending)
                                          1001 Pennsylvania Avenue, NW
                                          Washington, DC 20004
                                          (202) 624-2500
                                          swinkleman@crowell.com

                                          Valerie M. Goo (*pro hac vice* pending)
                                          515 South Flower Street, 41st Floor
                                          Los Angeles, Ca 90071
                                          (213-622-4750
                                          vgoo@crowell.com
                                          *Attorneys for Defendant, Nuna Baby*
                                          *Essentials, Inc.*

- 24 -